**UNITED STATES of America, Plaintiff,**

v.

**CHEM–DYNE CORP., et al., Defendants.**

**No. C–1–82–840.**

United States District Court,
S.D. Ohio, W.D.

Oct. 11, 1983.

As Amended Oct. 14, 1983.

Christopher Barnes, U.S. Atty., Elizabeth Whitaker, Asst. U.S. Atty., Cincinnati, Ohio, Carol E. Dinkins, Asst. Atty. Gen., Barry S. Sandals, James J. Dragna, Joyce R. Branda, Richard Lazarus, Land & Natural Resource Div., Deborah Woitte, U.S. Environmental Protection Agency, Washington, D.C., Jonathan McPhee, U.S. Environmental Protection Agency, Chicago, Ill., E. Dennis Muchnicki, Steven J. Willey, Asst. Attys. Gen., Environmental Law Section, Columbus, Ohio, for plaintiff.

Steve Williams, Wood, Lamping, Slutz & Reckman, Cincinnati, Ohio, for defendants Hamilton Industrial Real Es., B & W Enterprises, Whitco Enterprises and William L. Kovas.

John A. Garretson, Hamilton, Ohio, for Zettler.

Christopher R. Schraff, Martin S. Seltzer, Columbus, Ohio, for defendants Rohm & Haas Co., Delaware, Tennessee, Connecticut, Inc., CIBA–GEIGY Corp., and Shell Oil.

Alex S. Karlin, Houston, Tex., for defendant Shell Oil Co.

Ellen S. Friedell, Philadelphia, Pa., for defendant Rohm & Haas Co.

Robert A. Naidus, Ardsley, N.Y., for defendant CIBA–GEIGY Corp.

Gerald L. Baldwin, William H. Hawkins, Cincinnati, Ohio, Fred A. Windover, North Adams, Mass., for defendants Allied Corp., Aurora Casket Co. and Sprague Elec.

Thomas T. Terp, Cincinnati, Ohio, Richard W. Kearney, Gen. Counsel, Needham Heights, Mass., for defendants Ludlow Corp., Astro Containers, Inc. and The B.F. Goodrich Co.

R. Joseph Parker, Kim Burke, Cincinnati, Ohio, Phocion S. Park, St. Louis, Mo., for defendants Monsanto Co. and C.W. Zubiel Co.

Robert C. McIntosh, Arthur Knabe, Cincinnati, Ohio, for defendant Frank Irey, Jr., Inc.

Michael Szolosi, Columbus, Ohio, for defendants World Pipe Service Co., Kipin Industries and Frank Irey, Jr., Inc.

Daniel J. Gunsett, Columbus, Ohio, William W. Falsgraf, Cleveland, Ohio, for defendants Phillips Petroleum Co. and Browning Ferris Industries.

David C. Greer, Dayton, Ohio, for defendant Searle Medical Products.

John R. Cromer, Indianapolis, Ind., Thomas Ravis, Pittsburgh, Pa., for defendant Anvil Products Inc.

Richard L. Creighton, Jr., Cincinnati, Ohio, for defendant Liberty Solvents & Chemical.

Mark Wallach, Cleveland, Ohio, for defendant Chemical Solvents.

Thomas L. Conlan, Cincinnati, Ohio, John D. Tully, Warner Norcross & Judd, Grand Rapids, Mich., for defendant Bofors-Nobel, Inc.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

CARL B. RUBIN, Chief Judge.

This matter is before the Court on the Motion of the defendants for Partial Summary Judgment under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607 ("CERCLA"). Plaintiff United States has sued 24 defendants, who allegedly generated or transported the hazardous substances located at the Chem-Dyne treatment facility, for reimbursement of the superfund money expended to institute remedial action at the site. In order to expedite discovery and trial preparation, the defendants have moved for an early determination that they are not jointly and severally liable for the clean-up costs at Chem-Dyne. Manual for Complex Litigation, § 1.80 (1977).

### A. Statutory Construction

The defendants have moved for a determination of the scope of liability under CERCLA, 42 U.S.C. § 9607 which is a matter of first impression to this Court. At present, there is no case authority specifically addressing this point.

The analysis begins with an examination of the germane statutory language. *Dickerson v. New Banner Institute, Inc.,* —— U.S. ——, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). The statutory definition of liability is the standard of liability which obtains under 33 U.S.C. § 1321. 42 U.S.C. § 9601(32). The pertinent language provides that when the owner or operator of a vessel from which oil or hazardous substances is discharged in violation of § 1321(b)(3), he shall be liable to the United States Government for the actual costs ... 33 U.S.C. § 1321(f)(1). At the time of CERCLA's enactment, this section had been interpreted to impose a strict liability standard. *Steuart Transportation Co. v. United States,* 596 F.2d 609, 613 (4th Cir.1979); *United States v. Tex-Tow, Inc.,* 589 F.2d 1310, 1314–15 (7th Cir.1978); *Burgess v. M/V Tamano,* 564 F.2d 964, 982 (1st Cir. 1977), *cert. denied,* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978); *Tug Ocean Prince, Inc. v. United States,* 436 F.Supp. 907 (S.D.N.Y.1977), *aff'd in part, rev'd in part on other grounds,* 584 F.2d 1151 (2d Cir.1978). It is proper to assume Congress was aware of the judicial interpretation of section 1321 as a strict liability standard. *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979). In fact, the legislative history of the statute directly supports this finding. 126 Cong.Rec. S14964 (Nov. 24, 1980) H11787 (Dec. 3, 1980).

The liability section lists the classes of persons potentially liable under the Act for the costs incurred by government removal or remedial action.[1] *United States v. Waste Industries, Inc.,* 556 F.Supp. 1301 (E.D.N.C.1983); *City of Philadelphia v. Stephan Chemical Co.,* 544 F.Supp. 1135 (E.D. Pa.1982). In contrast to plaintiff's assertion that joint and several liability is clear from the express statutory language, the Court finds the language ambiguous with regard to the scope of liability. Consequently, in an attempt to discern the Congressional intent, the Court will review and weigh the legislative history of the Act. *Dickerson,* —— U.S. at ——, 103 S.Ct. at 986.

CERCLA was enacted both to provide rapid responses to the nationwide threats posed by the 30–50,000 improperly managed hazardous waste sites in this country as well as to induce voluntary responses to those sites. 5 U.S.Code Cong. & Ad.News 6119, 6119–6120 (1980). The legislation establishes a 1.6 billion dollar trust fund ("superfund"), drawn from industry and federal appropriations, to finance the clean-up and containment efforts. *Id.* at 6119. The state or federal government may then pursue rapid recovery of the costs incurred from persons liable to reimburse the superfund money expended. This recovery task may prove difficult when several companies used a site, when dumped chemicals react with others to form new or more toxic

---

1. Section 9607(a) provides:
Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release. 42 U.S.C. § 9607(a).

substances, or when records [2] are unavailable. Nevertheless, those responsible for the problems caused by the hazardous wastes were intended to bear the costs and responsibilities for remedying the condition. 5 U.S.Code Cong. & Ad.News at 6119.

As background, two different superfund bills proceeded simultaneously through the House and Senate. On November 24, 1980, the Senate made its final amendment to its bill, thereby eliminating the term strict, joint and several liability from its provisions. 126 Cong.Rec. S14964 (Nov. 24, 1980). Subsequently, on December 3, 1980, the House struck the language in its bill and substituted the language of the Senate bill, which was later enacted. 126 Cong. Rec. H11787 (Dec. 3, 1980).

The defendants quote at length from Senator Helms' speech:

> Retention of joint and several liability in S. 1480 received intense and well-deserved criticism from a number of sources, since it could impose financial responsibility for massive costs and damages awards on persons who contributed only minimally (if at all) to a release or injury. Joint and several liability for costs and damages was especially pernicious in S. 1480, not only because of the exceedingly broad categories of persons subject to liability and the wide array of damages available, but also because it was coupled with an industry-based fund. Those contributing to the fund will frequently be paying for conditions they had no responsibility in creating or even contributing to. To adopt a joint and several liability scheme on top of this would have been grossly unfair.
>
> The drafters of the Stafford-Randolph substitute have recognized this unfairness, and the lack of wisdom in eliminating any meaningful link between culpable conduct and financial responsibility. Consequently, all references to joint and several liability in the bill have been deleted...
>
> It is very clear from the language of the Stafford-Randolph substitute itself,

from the legislative history, and from the liability provisions of section 311 of the Federal Water Pollution Control Act, that now the Stafford-Randolph bill does not in and of itself create joint and several liability.

126 Cong.Rec. S15004 (Nov. 24, 1980). This view of statutory construction is at odds with the guidelines provided by the Supreme Court. Senator Helms was an opponent of the bill. *Id.* at S14988. Accordingly, his statements are entitled to little weight in construing the statute. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 204 n. 24, 96 S.Ct. 1375, 1386 n. 24, 47 L.Ed.2d 668 (1975); *Holtzman v. Schlesinger,* 414 U.S. 1304, 1313 n. 13, 94 S.Ct. 1, 6 n. 13, 38 L.Ed.2d 18 (1973); *United States v. Calamaro,* 354 U.S. 351, 357, 77 S.Ct. 1138, 1142, 1 L.Ed.2d 1394 (1956); *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 288, 76 S.Ct. 349, 360, 100 L.Ed. 309 (1956); *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 394, 71 S.Ct. 745, 750, 95 L.Ed. 1035 (1951).

Senator Stafford, sponsor of the bill, succinctly noted that there was an elementation of the term joint and several liability as well as an elimination of the scope of liability. 126 Cong.Rec. S14969 (Nov. 24, 1980). Senator Randolph, sponsor, explained the significance of these modifications:

> We have kept strict liability in the compromise, specifying the standard of liability under section 311 of the Clean Water Act, but we have deleted any reference to joint and several liability, relying on common law principles to determine when parties should be severally liable... The changes were made in recognition of the difficulty in prescribing in statutory terms liability standards which will be applicable in individual cases. The changes do not reflect a rejection of the standards in the earlier bill.
>
> Unless otherwise provided in this act, the standard of liability is intended to be the same as that provided in section 311

**2.** *See* The Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6923, 6924.

of the Federal Water Pollution Control Act (33 U.S.C. 1321). I understand this to be a standard of strict liability.

It is intended that issues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law. An example is joint and several liability. Any reference to these terms has been deleted, and the liability of joint tortfeasors will be determined under common or previous statutory law.

*Id.* at S14964.

Turning to the House proceedings, Representative Florio, sponsor, commented at length:

The liability provisions of this bill do not refer to the terms strict, joint and several liability, terms which were contained in the version of H.R. 7020 passed earlier by this body. The standard of liability in these amendments is intended to be ... strict liability... I have concluded that despite the absence of these specific terms, the strict liability standard already approved by this body is preserved. Issues of joint and several liability not resolved by this shall be governed by traditional and evolving principles of common law. The terms joint and several have been deleted with the intent that the liability of joint tortfeasors be determined under common or previous statutory law... Rather than announce the standard, and then cut back on its applicability, this bill refers to section 311 of the Clean Water Act and to traditional and evolving principles of common law in determining the liability of such joint tortfeasors. To insure the development of a uniform rule of law, and to discourage business dealing in hazardous substances from locating primarily in States with more lenient laws, the bill will en-

courage the further development of a Federal common law in this area.

I might point out that section 311 has been interpreted by the Coast Guard, the Government body responsible for administering the section 311(k) revolving fund, as imposing joint and several liability under appropriate circumstances... This established policy seems particularly applicable in cases of hazardous waste sites, where several persons have often contributed to an indivisible harm.

*Id.* at H11787 [3]. Representative Waxman observed, "[a]lthough the Senate version did not contain the House language on the question of joint and several liability, the intent of the House provisions will largely be served through the prevailing common law rules relating to apportionment among defendants who are held jointly and severally liable." *Id.* at H11799.

Statements of the legislation's sponsors are properly accorded substantial weight in interpreting the statute, although the remarks of a single legislator are not controlling. *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979); *Federal Energy Administration v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976); *Pan American World Airways, Inc. v. Civil Aeronautics Board,* 380 F.2d 770 (2d Cir. 1967), *aff'd,* 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968). The fact that the term joint and several liability was deleted from a prior draft of the bill or that the term liability refers to the standard under 33 U.S.C. § 1321, in and of itself, is not dispositive of the scope of liability under CERCLA. *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969). Perhaps in other contexts, when Congress deletes certain language it "strongly militates against a judgment that Congress intended

---

**3.** An opinion of the Assistant Attorney General referred to in Florio's statement and incorporated into the Congressional Record interprets 33 U.S.C. § 1321 as a strict liability standard, noting that the case law was based in part on the legislative history of that statute. 126 Cong.Rec. H11788 (Dec. 3, 1980). It was fur-

ther determined that the deletion of the term joint and several liability did not preclude the courts from imposing it where appropriate. *Id.* Finally, 42 U.S.C. § 9607(e)(2), which provides for contribution, was viewed as only having relevance in joint and several liability context. *Id.*

a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974). This case, however, presents an exceptional situation. A reading of the entire legislative history in context reveals that the scope of liability and term joint and several liability were deleted to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases. 126 Cong. Rec. at S14964, S15004, H11787, H11799; 126 Cong.Rec. H9465 (Sept. 23, 1980) (remarks of Rep. Madigan), H9466 (remarks of Rep. Stockman). The deletion was not intended as a rejection of joint and several liability. 126 Cong.Rec. S14964, H11787, H11799 (Nov. 24, 1980). Rather, the term was omitted in order to have the scope of liability determined under common law principles, where a court performing a case by case evaluation of the complex factual scenarios associated with multiple-generator waste sites will assess the propriety of applying joint and several liability on an individual basis. *Id.*

### B. Scope of Liability

■ Because the legislative history evinces the intent that the scope of liability under CERCLA, 42 U.S.C. § 9607, be determined from traditional and evolving principles of common law, the next issue becomes whether state or federal common law should be applied. In situations where, as here, there is a lack of an express statutory provision selecting state or federal law, the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts. *United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973). Again, the legislative history addressing the common law issue is not conclusive, referring both to "common law" and to "federal common law," 126 Cong.Rec. S14964, H11787, H11799.

State law as a rule of decision is not mandated under the *Erie* doctrine in this case because it falls within the exception provided for federal laws. 28 U.S.C. § 1652; *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although *Erie* eliminated the power of federal courts to create federal general common law, the power to fashion federal specialized common law remains untouched when it is "necessary to protect uniquely federal interests." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *United States v. Standard Oil Co.,* 332 U.S. 301, 307–308, 67 S.Ct. 1604, 1607–1608, 91 L.Ed. 2067 (1947).

■ The improper disposal or release of hazardous substances is an enormous and complex problem of national magnitude involving uniquely federal interests. Typically, an abandoned waste site will consist of waste produced by companies in several states within the area or region. W. Rodgers, Handbook on Environmental Law, pp. 619–697 (1977); Congressional Quarterly, pp. 795–804, Mar. 22, 1980. The pollution of land, groundwater, surface water and air as a consequence of this dumping presents potentially interstate problems. A driving force toward the development of CERCLA was the recognition that a response to this pervasive condition at the state level was generally inadequate. 5 U.S.Code Cong. & Ad.News at 6142. The subject matter dealt with in CERCLA is easily distinguished from areas of primarily state concern, such as domestic relations or real property rights, where state law was applied and there was no overriding interest in nationwide uniformity. *United States v. Yazell,* 382 U.S. 341, 351, 86 S.Ct. 500, 506, 16 L.Ed.2d 404 (1966); *DeSylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 979–980, 100 L.Ed. 1415 (1956); *United States v. Carson,* 372 F.2d 429, 434 (6th Cir.1967). Additionally, the superfund monies expended, for which the United States seeks reimbursement, are funded by general revenues and excise taxes. The degree to which the United States will be able to protect its financial interest in the trust fund is directly related to the scope of liability under CERCLA and is in no way dependent upon the laws of any state. When the United

States derives its authority for reimbursement from the specific Act of Congress passed in the exercise of a constitutional [4] function or power, its rights should also derive from federal common law. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Lake Misere*, 412 U.S. at 593, 93 S.Ct. at 2397; *Standard Oil*, 332 U.S. at 306, 67 S.Ct. at 1607; *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943). In conclusion, the rights, liabilities and responsibilities of the United States under 42 U.S.C. § 9607 are governed by a federal rule of decision. *Id.*

█ The question now becomes whether the scope of liability should be interpreted according to the incorporated state law of the forum state or a federally created uniform law. This determination is a matter of judicial policy dependent upon a variety of considerations relevant to the nature of the specific governmental interests and to the effects upon them of applying state law. *Kimbell*, 440 U.S. at 728, 99 S.Ct. at 1458; *Standard Oil*, 332 U.S. at 310, 67 S.Ct. at 1609. Federal programs that by their nature are and must be uniform in character throughout the nation necessitate the formulation of federal rules of decision. *Kimbell*, 440 U.S. at 728, 99 S.Ct. at 1458; *Standard Oil*, 332 U.S. at 311, 67 S.Ct. at 1609–1610. CERCLA is such a federal program. Representative Florio explained: "To insure the development of a uniform rule of law, and to discourage business dealing in hazardous substances from locating primarily in states with more lenient laws, the bill will encourage the further development of a Federal common law in this area." 126 Cong.Rec. H11787 (Dec. 3, 1980). CERCLA was designed to complement existing federal regulations by providing emergency funds for the clean-up of inactive or abandoned hazardous waste sites as well as illegal releases, such as "midnight dumping," located across the nation in virtually every state. *Id.* at H11801. Exposure to these substances poses a threat to the nation's national resources and to public health. A liability standard which varies in the different forum states would undermine the policies of the statute by encouraging illegal dumping in states with lax liability laws. *Id.* at H11787; *See* Report to Congress, Injuries and Damages From Hazardous Wastes—Analysis and Improvement of Legal Remedies, 97th Cong., 2d Sess. (1982). There is no good reason why the United States' right to reimbursement should be subjected to the needless uncertainty and subsequent delay occasioned by diversified local disposition when this matter is appropriate for uniform national treatment.

█ Finding, then, that the delineation of a uniform federal rule of decision is consistent with the legislative history and policies of CERCLA and finding further that no compelling local interests mandate the incorporation of state law, a determination of the content of the federal rule is the final step in the analysis. Federal statutes dealing with similar subject matter are a prime repository of federal policy on a subject and a starting point for ascertaining federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 91, 92 S.Ct. 1385, 1385, 31 L.Ed.2d 712 (1972). Neither statutes nor decisions of a particular state can be conclusive when fashioning federal law.

The Federal Water Pollution Control Act (FWPCA) was codified pursuant to the Congressional policy prohibiting oil or hazardous substance discharges into navigable waters of the United States. 33 U.S.C. § 1321(b)(1). The owner or operator of a vessel which illegally discharges may be jointly and severally liable to the government for its expenses in cleaning up the substances. *Id.* at § 1321(b)(2)(B)(ii); *United States v. M/V Big Sam*, 681 F.2d 432, 439 (5th Cir.1982); *Tex-Tow*, 589 F.2d at 1314; *In Re Berkley Curtis Bay Co.*, 557 F.Supp. 335, 339 (S.D.N.Y.1983); *aff'd in part and rem in part*, 697 F.2d 288 (2d

---

**4.** *See* U.S. Const., Art. IV, § 3, cl. 2: "The Congress shall have power to dispose of and make all needful rules and regulations respect-

ing the territory and other property belonging to the United States..."

Cir.1983); *United States v. Hollywood Marine, Inc.,* 519 F.Supp. 688, 692 (S.D.Tex. 1981), *rev'd on other grounds,* 625 F.2d 524 (5th Cir.1980). In fact, the pertinent language of the two statutes addressing liability and contribution is strikingly similar. *Compare* 33 U.S.C. § 1321(f)(1) *with* 42 U.S.C. § 9607(a), (b), and 33 U.S.C. § 1321(h) *with* 42 U.S.C. § 9607(e)(2). While the complementary policies and comparable language of FWPCA and CERCLA are persuasive points, a blanket adoption of the joint and several liability standard of § 1321 would be inconsistent with the legislative history of CERCLA. .

Typically, as in this case, there will be numerous hazardous substance generators or transporters who have disposed of wastes at a particular site. The term joint and several liability was deleted from the express language of the statute in order to avoid its universal application to inappropriate circumstances. An examination of the common law reveals that when two or more persons acting independently caused a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused. Restatement (Second) of Torts, §§ 433A, 881 (1976); Prosser, Law of Torts (4th ed. 1971), pp. 313–314; *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979); *See Michie v. Great Lakes Steel Division, National Steel Corp.,* 495 F.2d 213 (6th Cir. 1974); *See, e.g., City of Valparaiso v. Moffit,* 12 Ind.App. 250, 255, 39 N.E. 909 (1895) (two independent polluters of a stream, although not joint tortfeasors, are jointly and severally liable for damages). But where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm. Restatement (Second) of Torts, § 875; Prosser at 315–316. Furthermore, where the conduct of two or more persons liable under § 9607 has combined to violate the statute, and one or more of the defendants seeks to limit his liability on the ground that the entire harm is capable of apportionment, the burden of proof as to apportionment is upon each defendant. *Id.* at § 433B; *Id.* These rules clearly enumerate the analysis to be undertaken when applying 42 U.S.C. § 9607 and are most likely to advance the legislative policies and objectives of the Act.

### C. Summary Judgment

■ The defendants, under section 1.80 of the Manual for Complex Litigation, have moved for an early determination that they are not jointly and severally liable for the reimbursement of clean-up costs at Chem-Dyne. The proposition of the defendants is that because joint and severally liability is not expressly provided for in CERCLA, there is no basis for its imposition. We find this to be an incorrect interpretation of the Act, and will apply the law under 42 U.S.C. § 9607 as delineated in the prior discussion. The Motion of defendants is essentially a Motion for a Partial Summary Judgment on the issue of joint and several liability. Fed. R.Civ.P. 56; *See, In Re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1170 (5th Cir.1979), *cert. denied sub nom., Safeway Stores, Inc. v. Meat Price Investigators Ass'n,* 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980).

The summary judgment standard in this Circuit is a stringent one. Rule 56(c) permits the Court to grant summary judgment when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). In deciding a Motion for Summary Judgment, the Court must construe evidence in a light least favorable to the movant and most favorable to the opposing party. *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). The Court must exercise extreme caution in disposing of complex cases on a Motion for Summary Judgment. *S.J. Groves & Sons Co. v. Ohio Turnpike Commission,* 315 F.2d 235, 237 (6th Cir. 1963), *cert. denied,* 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).

The question of whether the defendants are jointly or severally liable for the clean-up costs turns on a fairly complex factual determination. Read in the light most favorable to the plaintiff, the following facts illustrate the nature of the problem. The Chem-Dyne facility contains a variety of hazardous waste from 289 generators or transporters, consisting of about 608,000 pounds of material. Some of the wastes have commingled but the identities of the sources of these wastes remain unascertained. The fact of the mixing of the wastes raises an issue as to the divisibility of the harm. Further, a dispute exists over which of the wastes have contaminated the ground water, the degree of their migration and concomitant health hazard. Finally, the volume of waste of a particular generator is not an accurate predictor of the risk associated with the waste because the toxicity or migratory potential of a particular hazardous substance generally varies independently with the volume of the waste.

This case, as do most pollution cases, turns on the issue of whether the harm caused at Chem-Dyne is "divisible" or "indivisible." If the harm is divisible and if there is a reasonable basis for apportionment of damages, each defendant is liable only for the portion of harm he himself caused. Restatement (Second) of Torts, §§ 443A, 881. In this situation, the burden of proof as to apportionment is upon each defendant. Id. at § 433B. On the other hand, if the defendants caused an indivisible harm, each is subject to liability for the entire harm. Id. at § 875. The defendants have not carried their burden of demonstrating the divisibility of the harm and the degrees to which each defendant is responsible.

The judicial interpretation of the nature and scope of liability under 42 U.S.C. § 9607 is intended to assist the parties in expediting discovery and trial preparation. Manual of Complex Litigation, § 1.80. There is an insufficient evidentiary basis, with unresolved factual questions, which precludes the resolution of this case in the form of a summary judgment motion. Because there are genuine issues of material fact concerning the divisibility of the harm and any potential apportionment, the defendants are not entitled to judgment as a matter of law.

### D. Summary

In conclusion, 42 U.S.C. § 9607 provides for a uniform federal rule of decision which delineates the scope of liability pursuant to the Restatement (Second) of Torts §§ 433B, 433A, 875, 881. Additionally, because the defendants have not shown conclusively that there exists no genuine issue of material fact, they are not entitled to the partial summary judgment as a matter of law. *Sartor,* 321 U.S. at 620, 64 S.Ct. at 724.

The Court hereby DENIES defendants' Motion for Partial Summary Judgment.

IT IS SO ORDERED.