**UNITED STATES of America, Plaintiff,**

v.

**Kenneth HUNTER, Jr., et al., Defendants.**

**Casmalia Resources Site Steering Committee, Plaintiff,**

v.

**Kenneth Hunter, Jr., et al., Defendants.**

**Nos. CV 97–9449 RAP RZX, CV 98–0074 RAP RZX.**

United States District Court, C.D. California.

Sept. 24, 1999.

final determination of these sums cannot be made until the bankruptcy proceedings are concluded.

Bradley R. O'Brien, Thomas H. Pacheco, U.S. Department of Justice, Environmental Enforcement, San Francisco, CA, James J. Dragna, R. Raymond Rothman, Douglas A. Gravelle, McCutchen, Doyle, Brown & Enersen, LLP, Los Angeles, CA, Leon W. Weidman, Lawrence E. Kole, Office of the United States Attorney, Civil Division, Los Angeles, CA, for plaintiffs.

Henry S. Weinstock, Frederic A. Fudacz, Mary Lou Katz, Nossaman Guthner Knox & Elliott, Los Angeles, CA, for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PAEZ, District Judge.

## I.

### *Introduction*

This case concerns the Casmalia Resources Hazardous Waste Management Facility, a former commercial hazardous waste treatment, storage and disposal facility that operated from 1973–1989 ("Casmalia site"). The Casmalia site was 252 acres in size and contained over fifty surface impoundments, two waste treatment units, and several waste landfills for materials including pesticides, caustics, PCBs, and acids. During its time of operation the Casmalia site accepted in excess of 4 billion pounds of hazardous waste. In 1989, the State of California Regional Water Quality Control Board ("RWQCB"), after investigating whether the facility was causing groundwater contamination, ordered the Casmalia site to cease accepting waste. In 1992 the EPA took measures to stabilize the Casmalia site at a cost in excess of $13 million. Since that time the United States government has been taking steps to complete a permanent remediation of the Casmalia site; these activities are being conducted by the Casmalia Site Steering Committee.

The United States filed this action on behalf of the Environmental Protection Agency ("EPA") on June 24, 1997, pursuant to section 107(a)(4)(A) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "the Act"), 42 U.S.C. § 9607(a)(4)(A). Defendants Kenneth Hunter Jr., Casmalia Resources, and Hunter Resources, were all owners or operators of the Casmalia site;[1] the government seeks to hold them liable for the costs incurred to remediate the site. The government is also pursuing a plan to develop a settlement proposal or "cash-out" that will allow the thousands of entities who may have disposed hazardous substances at the Casmalia site to resolve their liability.

Pending before the Court are defendants' and the United States' cross-motions for partial summary judgment. The

1. Casmalia Resources is the acknowledged owner of the site; Hunter Resources is the general partner of Casmalia Resources, and Kenneth Hunter is the president of Hunter Resources.

parties request that the Court rule upon the limited question of whether, where the United States is alleged to be a potentially responsible party (PRP), it may still assert claims against private defendants for joint and several liability under CERCLA.[2]

For the reasons given below, the United States' cross-motion for summary judgment is **granted** and defendants' motion is **denied.**

## II.

### *Discussion*

#### A. Actions under CERCLA

Section 107(a) of CERCLA sets forth the basic parameters of CERCLA liability:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

**(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;**

**(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;**

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607 (1999) (emphasis added).

CERCLA also contemplates actions for contribution against PRPs for costs of remediation:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for

---

**2.** Although the Court has not yet been called upon to make the factual determination of what governmental agencies, if any, are properly considered PRPs in this action, defendants have indicated that multiple governmental agencies delivered waste to the Casmalia site. (*See* Defs.' Mot. at 4:6–10.) Because section 107(a) imposes liability on even those parties that merely arrange for disposal or treatment of hazardous substances, 42 U.S.C. § 9607(a)(3), and it appears that several agencies contracted to have waste delivered to the site, the Court will proceed as though the United States, through its various agencies, is a PRP.

contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f) (1999).

Defendants urge the Court to read these statutes in light of *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998), in which the Ninth Circuit determined that PRPs may only proceed against one another for contribution for recovery costs, and may not seek to hold other PRPs jointly and severally liable. The United States argues that when the government is acting in its enforcement capacity, it should not be restricted only to claims for contribution where governmental agencies are alleged PRPs.[3]

## B. CERCLA Liability

There are two competing lines of case law in this area. The first, relied upon by defendants, is embodied by opinions like *Pinal Creek*, in which the Ninth Circuit plainly stated that a private PRP may only assert claims for contribution, and not for joint and several liability, against other PRPs. The second line of cases, relied upon by the United States, recognizes the government's right under section 107 of CERCLA to assert claims for joint and several liability. However, neither line of cases squarely addresses whether, when governmental agencies are PRPs, the United States may still seek joint and several liability against a private defendant.

**3.** The parties do not dispute that under 42 U.S.C. § 9620(a)(1), United States departments, agencies, and instrumentalities are liable under CERCLA, including section 107, to the same extent as nongovernmental entities. 42 U.S.C. § 9620(a)(1) (1998).

**4.** There is some tension among the different circuits as to the interaction between sections 107 and 113. The Ninth Circuit in *Pinal Creek* determined that it is section 107 that governs CERCLA liability while 113(f) creates the mechanism for apportioning that liability. *Id.* at 1302 ("Put another way, while § 107 created the right of contribution, the 'machinery' of § 113 governs and regulates such ac-

The Court considers these two lines of case law in turn.

### 1. Pinal Creek

*Pinal Creek* concerned three mining companies who had engaged in the voluntary cleanup of a hazardous waste site, for which purpose the companies formed the Pinal Creek Group. The Group then commenced a civil action in an effort to recover all or some of its cleanup costs from other PRPs. The Group sought to impose joint and several liability upon the other PRPs even though it admitted that its members were partly responsible for incurring a portion of the needed cleanup costs. *Pinal Creek*, 118 F.3d at 1299.

The Ninth Circuit held that despite the fact that section 107 states that a person may recover the necessary costs of response, a PRP may not assert a CERCLA claim to recover the totality of its costs; rather, a PRP may only seek contribution from other PRPs. *Id.* at 1302.[4] "CERCLA's claim for contribution creates several-only liability among PRPs. Accordingly, the Pinal Group is foreclosed from imposing joint and several liability on any of the Newmont PRPs, even with respect to any amount that may exceed the Pinal Group's own equitable share of the cleanup costs." *Id.* at 1303.

The Ninth Circuit observed that contribution, while only implicit in the language of section 107, was made explicit by Congress in enacting section 113(f).[5] Further-

tions, providing the details and explicit recognition that were missing from the text of § 107.")

**5.** The government argues that because the Ninth Circuit's opinion in *Pinal Creek* only addressed 107(a)(4)(B) and not 107(a)(4)(A) (under which the government brings its claim), *Pinal Creek* should not apply. The Court agrees that the Ninth Circuit's holding in *Pinal Creek* only squarely addresses a claim for joint and several liability under section 107(a)(4)(B). However, given the broad policy arguments advanced by the Ninth Circuit in that opinion, as well as the similarity in structure and language of 107(a)(4)(A) and

more, the court also observed that such a holding was consistent with statements by the Supreme Court and by several other circuits that a claim by one PRP against another is necessarily one for contribution. *Id.*

The court also highlighted several policy concerns with a regime of joint and several liability. The court reasoned that allowing PRPs to be held jointly and severally liable for the total response costs incurred by a claimant-PRP would mean that defendant PRPs would end up absorbing all of the cost attributable to "orphan shares," those shares attributable to PRPs who either are insolvent or cannot be located or identified. Joint and several liability would thus effectively immunize the claimant PRP from the risk of such orphan-share liability and would restrict substantially the ability of courts to apportion costs equitably pursuant to section 113(f). *Id.* at 1303. The court also expressed concern that a joint and several approach would " 'guarantee[ ] inefficiency, potential duplication, and prolongation of the litigation process in a CERCLA case.' " *Id.* at 1303 (citing *TH Agriculture & Nutrition Co., Inc. v. Aceto Chem. Co., Inc.,* 884 F.Supp. 357, 361 (E.D.Cal.1995)).

In sum, in *Pinal Creek* the Ninth Circuit made clear that sections 107 and 113 do not contemplate the imposition of joint and several liability by a private PRP upon other PRPs, but only allow claims for contribution in such circumstances.

### 2. joint and several liability

At the same time, where the United States is the party seeking to recover clean-up costs, courts have recognized the United States' ability to seek joint and several liability under section 107.

In *United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988), the Fourth Circuit found that the government may impose joint and several liability upon the owner of a site as well as individual generator defendants (those who generated waste and then contracted for its disposal on the site).[6] The Fourth Circuit looked to principles of tort law in support of its finding: "Under common law rules, when two or more persons act independently to cause a single harm for which there is a reasonable basis of apportionment according to the contribution of each, each is held liable only for the portion of the harm it causes. [citation omitted] When such persons cause a single and indivisible harm, however, they are held liable jointly and severally for the entire harm." *Monsanto,* 858 F.2d at 171–72. Several other circuits have also allowed the government to impose joint and several liability upon PRPS, subject to certain conditions. *See, e.g., United States v. Township of Brighton,* 153 F.3d 307, 317–18 (6th Cir.1998) (imposing joint and several liability on Township of Brighton and individual owner of property); *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 721–22 (2d Cir.1993) (acknowledging that United States may impose joint and several liability on multiple defendants, subject to finding that harm is indivisible).

The Tenth Circuit, in considering the proper statute of limitations for an action to recover cleanup costs, observed:

(B), it is not sufficient to rely upon the mere existence of a separation of claims in the statute: the Court will thus address the reasoning advanced by the Ninth Circuit in considering the parties' positions here. However, as discussed below, the Court believes that the statutory separation of section 107(a)(4)(A) and (B), while not by itself dispositive of the issue, is clearly reflective of the distinct role that certain governmental entities, particularly the United States government, play in enforcing CERCLA.

6. Some of the third party generators in that action were federal agencies; however, these agencies settled with the EPA prior to the civil action and therefore the question of whether the United States could proceed against private defendants on a theory of joint and several liability when governmental agencies were also PRPs was not addressed by the Fourth Circuit.

A government entity (Federal, State or Indian) or a party who did not contribute to the waste may recover all of its expenditures in a traditional § 107(a) "cost recovery" action against any PRP. Liability will be strict, joint and several. A PRP who contributed to the waste may recover from other PRPs a portion of the costs it expended in cleaning up the site in a contribution action under § 113(f). The liability of the other PRPs will be defined by § 107, but under § 113(f), that liability will be several, and the total cleanup costs—including responsibility for 'orphan shares'—will be equitably apportioned among all the PRPs, with the court being able to consider any factors it deems relevant.

*Sun Co., Inc.*, 124 F.3d at 1193 (citations omitted). In other words, the Tenth Circuit in *Sun Company* drew a distinction between the government and those parties who are *not* PRPs but have expended recovery costs on the one hand, and PRPs on the other.

None of these cases, however, addresses the potential imposition of joint liability where federal government agencies are themselves PRPs. The Court therefore turns to a consideration of the legislative history of CERCLA for further clarification.

### 3. legislative history

The legislative history accompanying the 1986 Superfund Amendments and Reauthorization Act of 1986 (SARA) indicates that Congress intended the government to have a unique role in enforcing CERCLA. In House Report No. 99–253(I), the House Energy and Commerce Committee observed, of section 107:

> The section modifies the potential liability of Federal, State and local governments that respond to emergencies created by the release of a hazardous substance, pollutant or contaminant generated by or from a facility owned by another person.... This section removes a disincentive for governments to respond to emergencies covered by CERCLA. So long as a Federal, State or local government acts in a non-negligent way when undertaking an emergency action to abate a hazard under CERCLA that government will not be subject to the same liability provisions applicable to the parties that created the hazard.

.    .    .    .    .

No change has been made in the standard of liability that applies under CERCLA. As under section 311 of the Federal Water Pollution Control Act, 33 U.S.C. 1321, liability under CERCLA is strict, that is, without regard to fault or willfulness. Where appropriate, liability under CERCLA is also joint and several, as a matter of federal common law.

Explicit mention of joint and several liability was deleted from CERCLA in 1980 to allow courts to establish the scope of liability through a case-by-case application of 'traditional and evolving principles of common law' and pre-existing statutory law. See 126 Cong.Rec. H11787 (daily ed. Dec. 3, 1980) (statement by Rep. Florio); 126 Cong.Rec. S14967 (daily ed. Nov. 24, 1980) (statement by Sen. Stafford). The courts have made substantial progress in doing so. The Committee fully subscribes to the reasoning of the court in the seminal case of *United States v. Chem–Dyne Corporation*, 572 F.Supp. 802 (S.D.Ohio 1983), which established a uniform federal rule allowing for joint and several liability in appropriate CERCLA cases. As that court held:

> A reading of the entire legislative history in context reveals that the scope of liability and term joint and several liability were deleted to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases. (Citations omitted.) The deletion was not intended as a rejection of joint and several liability.

(Citations omitted.) Rather, the term was omitted in order to have the scope of liability determined under common law principles, where a court performing a case by case evaluation of the complex factual scenarios associated with multiple-generator waste sites will assess the propriety of applying joint and several liability on an individual basis. (*U.S. v. Chem–Dyne, supra,* at 808.)

. . . . .

When two or more persons acting independently caused a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he had himself caused. But where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm. Furthermore, where the conduct of two or more persons liable under [section] 9607 has combined to violate the statute, and one or more of the defendants seeks to limit his liability on the ground that the entire harm is capable of apportionment, the burden of proof as to apportionment is upon each defendant. 572 F.Supp. at 810 [citations omitted].

The Committee believes that this uniform federal rule on joint and several liability is correct and should be followed. It is unnecessary and would be undesirable for Congress to modify this uniform rule. Thus, nothing in this bill is intended to change the application of the uniform federal rule of joint and several liability enunciated by the Chem–Dyne court.

H.R.Rep. 99–253(I), 1986 U.S.C.C.A.N. 2835, 2855–56. The Committee explicitly distinguished the United States' ability to seek joint and several liability from claims for contribution as allowed under § 113. In discussing, § 113, the Committee observed: "This section does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107 ... whether or not the U.S. was an owner or operator of a facility or a generator of waste at the site." *Id.* at 2856.

The rule applied in *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802 (S.D.Ohio 1983), which the House Committee on Energy and Commerce cited so favorably, is similar to those principles later articulated in *Sun Co., Inc.,* by the Tenth Circuit. Specifically, the *Chem–Dyne* court found that, while joint and several liability was not supported explicitly by the text of the statute, principles of federal common law should apply to CERCLA cases. Therefore, the district court reasoned, when the harm caused by two or more PRPs could be subject to a reasonable basis for division according to the contribution of each PRP, each PRP should be liable only for the amount of harm caused. However, where the harm is not divisible, the liability imposed should be joint and several. And the burden to demonstrate apportionment is upon each defendant. *Chem–Dyne,* 572 F.Supp. at 810.[7]

Although *Chem–Dyne*'s ruling significantly pre-dated the adoption of the contribution provisions of 113(f), the House Committee report indicates that this rule should still apply in light of the enactment of 113. The legislative history of CERCLA thus supports imposition of joint and

---

**7.** Note that the *Chem–Dyne* court found that the question of whether defendants were joint and severally liable for the clean-up costs turned on a fairly complex factual determination concerning the divisibility of the harm. The court noted that disputes existed over whether the wastes had contaminated the ground water, the degree of their migration and whether a concomitant health hazard had been engendered. *Chem–Dyne,* 572 F.Supp. at 811. The court found that defendants were not entitled to summary judgment finding that the harm was divisible and therefore joint and several liability should not be imposed.

several liability upon PRPs by the United States, where it has incurred response costs in its enforcement capacity.

### 4. harmonizing these results

Although circuit court case law only clearly supports the imposition of joint and several liability in cases where the defendants have not raised the argument of the government's presence as a PRP as a bar, nonetheless this logic may still be reconciled with the Ninth Circuit's holding in *Pinal Creek.*

Returning once again to *Pinal Creek*, the Ninth Circuit specifically focused upon the problem of the absorption of "orphan shares"—those shares "attributable to PRPs who either are insolvent or cannot be located or identified." *Pinal Creek*, 118 F.3d at 1303. The court expressed concern that a rule of joint and several liability would immunize the claimant-PRP from the risk of orphan-share liability and would restrict a court's ability to apportion costs equitably pursuant to § 113(f).

The Court does not believe that this concern militates against the government's ability to assert joint and several liability against defendants here. First, allowing the government to proceed in a claim for joint and several liability would not be a final resolution as to the government's own liability. The Hunter defendants could still proceed against the alleged government PRPs at a later point in this litigation for contribution. In *Pinal Creek*, by contrast, the plaintiff PRPs were seeking to recover *all* of their costs and thus completely absolve themselves of any financial burdens of liability. Second, as at least one commentator has noted, orphan shares need not be entirely shifted upon the defendant PRPs in a cost recovery action; orphan share amounts may be equitably apportioned among solvent PRPs according to the broad equitable discretion afforded courts under section 113(f). *See,* Tamara A. Taylor, *Classifying CERCLA Claims: A Critique of Pinal Creek v. Newmont Mining,* 28 Envtl.L. 755, 781 (1998).

In other words, simply because the Court might award the government the full amount of its recovery costs against the Hunter defendants does not mean that the Hunter defendants would then be forced to swallow the complete burden of the orphan shares. The Court could, under a consideration of the appropriate equitable factors, apportion these shares among the solvent PRPs, including the government agencies involved.

In addition, the Ninth Circuit expressed concern that "even a modified rule, in which the joint and several liability of defendant-PRPs is reduced by that portion of the orphan shares which the claimant-PRP should equitably bear, could result 'in a chain of multiple, and unnecessary lawsuits.'" *Id.* (citing *Ciba–Geigy Corp. v. Sandoz Ltd.,* 1993 WL 668325 at *7 (D.N.J. Jun.17, 1993)). This factor does not militate against a prior imposition of joint and several liability here. The relative shares of liability will be determined during the course of this litigation regardless of whether there is a prior imposition of joint and several liability.

### 5. indivisibility of harm

The ability to impose joint and several liability is not without its limits, however. Those circuits that have explicitly recognized such a rule have also recognized a common law palliative to the statutory framework. Specifically, those circuits that have allowed for the imposition of joint and several liability have also stated that a court may only impose joint and several liability where there has been indivisible harm. *See e.g., United States v. Township of Brighton,* 153 F.3d 307, 317–18 (6th Cir.1998) (where harm is indivisible, CERCLA allows imposition of joint and several liability); *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 721–22 (2d Cir.1993) (courts have adopted scheme of joint liability mitigated by possibility of showing apportionment of damages where harm is divisible, and polluter bears ultimate burden of establishing rea-

sonable basis for apportionment); *Bell Petroleum Servs., Inc. v. Sequa Corp.*, 3 F.3d 889, 901 (5th Cir.1993) (noting three strains of approach to joint and several liability question and stating that *Chem–Dyne* approach is the appropriate framework to adopt). However, the defendant seeking to avoid joint and several liability has the burden of demonstrating divisibility. *Township of Brighton*, 153 F.3d at 317–18. Where defendants bear the burden of proving divisibility, "responsible parties rarely escape joint and several liability." *Colorado & Eastern R.R.*, 50 F.3d at 1535.

### III.

### *Conclusion*

■ For the reasons stated above, the Court is persuaded that the government should be able to impose joint and several liability upon private PRPs, even when government agencies are themselves PRPs.[8] The Court, however, does not rule at this time upon whether defendants' will *actually* be subject to joint and several liability. According to the principles articulated in *Chem–Dyne* and the jurisprudence of several other circuits, it appears that, where defendants are able to demonstrate that the harm in question was divisible, defendants may not be held jointly and severally liable. However, whether or not this is the case involves a heavily fact-intensive inquiry; the Court is thus not able to address this issue on this motion for summary judgment.

■ The Court also notes that it agrees with the government that the burden is *not* on the United States to demonstrate indivisibility. Although the Ninth Circuit

has not spoken on this issue, the general rule among circuits is that the United States government may proceed with a claim for joint and several liability, except where it is proven that the harm is divisible and liability allocable. However, those courts that have so held have also placed the burden to demonstrate such divisibility upon defendants. *See, e.g. Colorado & Eastern R.R.*, 50 F.3d at 1535 ("courts have been reluctant to apportion costs between PRPs and hence have adopted the rule that 'damages should be apportioned only if the defendant can demonstrate that the harm is divisible'" (citing *O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir.1989))).

As a final note, the Court recognizes that this finding relies upon an understanding of the United States government's unique role: through the EPA it is responsible for enforcing CERCLA and recovering response costs to protect the public fisc. At the same time, there are governmental agencies who are themselves PRPs. If the government were a private party in this same factual situation, it would only be able to avail itself of a claim for contribution. However, the government's role in the enforcement of CERCLA is greater than that of a mere private party. Allowing the government to impose joint and several liability is in harmony with the overall policy aims of CERCLA. As the Second Circuit has stated:

> In passing CERCLA Congress faced the unenviable choice of enacting a legislative scheme that would be somewhat unfair to generators of hazardous substances or one that would unfairly burden the taxpaying public. The financial burdens of toxic clean-up had been vastly underestimated.... It is of course

**8.** The Court recognizes that this holding is squarely in contradiction with the holding of an unpublished district court case relied upon by defendants, *City of Fresno v. NL Indus., Inc.*, 1995 WL 641983 (E.D.Cal.1995). In that case the district court found that the city's claim as a PRP was limited to one for contribution under 113(f) and the city could not bring a 107(a) claim. However, there the

governmental entity in question was a city and therefore the city's action was brought under CERCLA section 107(a)(4)(B) and not 107(a)(4)(A). Therefore, the city's position was analogous to that of a private PRP who could only seek contribution.

In addition, this Court is not bound by an unpublished decision of another district court.

the public-at-large that is already bearing the economic brunt of this enormous national problem. There may be unfairness in the legislative plan, but we think Congress imposed responsibility on generators of hazardous substances advisedly. And, even were it not advisedly, we still must take this statute as it is.

*Alcan Aluminum Corp.*, 990 F.2d at 716–17.

Finally, the Court notes that the harsh results of a joint and several liability regime are mitigated both by the availability of the "divisible harm" defense and by the courts' ability to apportion costs in an equitable manner.

Accordingly, for the reasons given above, defendants' motion for summary judgment is **denied.** The United States' motion for partial summary judgment is **granted.**

**IT IS SO ORDERED.**