**CASTLEROCK ESTATES, INC., Plaintiff,**

v.

**ESTATE OF Walter S. MARKHAM, et al., Defendants.**

**No. C–93 20928 RPA/PVT.**

United States District Court, N.D. California.

Nov. 14, 1994.

M. Scott Donahey, Edward L. Quevedo, Christopher M. Brock, Michael G. McClory, Holtzman, Wise & Shepard, Palo Alto, CA, for defendant Wells Fargo Bank, N.A.

Robert D. Wyatt, Danielle J. O'Hanlon, Kimberly M. McMorrow, Julie K. Walters, Beveridge & Diamond, San Francisco, CA, for plaintiff Castlerock Estates, Inc.

Thomas Packer, Gordon & Rees, San Francisco, CA, for Estate of Walter S. Markham, et al.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

AGUILAR, District Judge.

### INTRODUCTION

The court has before it a motion by defendant Wells Fargo Bank for partial summary judgment, or in the alternative for summary adjudication. The court has read and considered all of the papers and has heard the argument of counsel. Following argument the court took the matter under submission and now renders its decision as follows.

The environmental contamination that is the subject of this case was caused by a lengthy period of "cattle dipping" that occurred on property known as the Markham Ranch in Monterey County. Cattle dipping is the practice of dipping cattle in a tank of toxic chemicals in order to free the livestock from pests. Apparently, the toxic chemicals spilled onto the property. The spillage con-

taminated a twelve (12) acre parcel of the Ranch.

Castlerock Estates Inc. ("Castlerock") is the current owner of the Markham Ranch. Castlerock filed this action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 et seq. Castlerock seeks to recover cleanup costs from Wells Fargo Bank ("Wells Fargo"). Wells Fargo is the successor bank to Crocker Bank ("Crocker"). Crocker was the bank that acted as conservator and then executor for one of the prior owners of the Ranch, Lucile Markham. The property that made up a large portion of Lucile Markham's estate became contaminated, possibly during the time Crocker held fiduciary responsibilities as conservator or executor. When purchasing Crocker's assets, Wells Fargo also accepted liability for Crocker's negligent acts, wrongdoings and other responsibilities. It is through this tenet of corporations law that Wells Fargo now faces potential financial responsibility for Crocker's alleged liability under CERCLA.

Wells Fargo brings this motion on the ground that Crocker was not an owner or operator of the Markham Ranch when the land was allegedly contaminated by cattle-dipping. Wells Fargo claims it is, therefore, not liable under CERCLA.

## FACTUAL BACKGROUND

The court has been provided with the following history of ownership: Walter and Lucile Markham owned real property known as the Corral de Tierra Ranch. They later renamed the property the "Markham Ranch." Lucile Markham and Walter Markham owned this property together as community property.

When Lucile Markham became ill with Parkinson's disease in 1969, Crocker acted as conservator for her estate. The conservatorship lasted from June 20, 1969 until her death on June 29, 1977. After her death, Crocker Bank served as the executor of Lucile Markham's estate. On May 30, 1986, Wells Fargo merged with Crocker Bank.

Evidence has been presented that, from 1969 to 1974, Crocker, as conservator and later as executor, held an undivided one-half community property interest in the Markham Ranch, and became involved in the operation and control of the property. Other evidence suggests that during the conservatorship and executorship periods, Walter Markham retained exclusive possession, management and control of the entire property.

During this period, on March 13, 1974, Walter Markham, individually, and Crocker, on behalf of Lucile Markham, sold the Ranch to a company named Rancho Corral de Tierra, Inc. ("Rancho Corral"). After the sale, the conservatorship estate held one-half of Rancho Corral's down payment and a one-half interest in the promissory note executed by Rancho Corral. On October 1, 1974, Rancho Corral defaulted on its obligations. In March of 1976, Walter Markham, individually, and Crocker, on behalf of Lucile Markham, reacquired the Ranch. After Lucile Markham died on June 29, 1977, Crocker was appointed as the executor of her estate. The appointment was effectuated on July 22, 1977. On August 25, 1978, Walter Markham and Crocker Bank, as executor for Lucile Markham, sold the Ranch to Anthony and Salvatore Palma.

On March 9, 1979, Crocker Bank was discharged as conservator, and the Probate Court relieved the Bank of "... liability for all acts subsequent thereto." See Order Approving Discharge (Exh.V. to Brock Decl.) at MR000008. See Cal.Prob.C. § 12250 (continues Cal.Prob.C. § 1066 without substantive change).

On June 22, 1979, the court entered the Judgment Settling First and Final Account and Report of Executor and Final Distribution under the Will. Said Judgment closed the Estate of Lucile Markham and finalized the testamentary trust of Lucile Markham. See Judgment Settling First and Final Account (Exh.W. to Brock Decl.) at MR000789, MR000792, MR000801. On December 30, 1980, Crocker Bank was discharged as executor and "released from liability." See Final Discharge (Exh.X to Brock Decl.) at MR000836. See Cal.Prob.C. § 12250.

Anthony and Salvatore Palma subsequently sold the Ranch to Castlerock. After Castlerock purchased the property, the cattle dipping contamination came to the attention of the government. There is a question as to when the cattle dipping occurred. Some evidence presented shows that dipping ended between 1959 and 1964. Other evidence suggests that the dipping ended in the 1970s. Nonetheless, as the current owner, Castlerock became obligated to pay cleanup costs as per the regulatory provisions of CERCLA.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if no factual issues exist for trial. To survive a motion for summary judgment, the non-moving party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In addition, the non-moving party must demonstrate that the factual dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The standards and procedures applicable to motions for summary judgment also apply to motions for summary adjudication.

## ISSUES PRESENTED

1. What is the test for liability under CERCLA?

2. How is the liability test applied to the case at hand?

i. When did the cattle dipping occur?

ii. Do questions of material fact remain as to the issue of whether Crocker, as conservator/executor, was an "owner" of the Markham Ranch for CERCLA purposes at the time of the dipping activity?

iii. Do questions of material fact remain as to the issue of whether Crocker, as conservator/executor, was an "operator" of the Markham Ranch for CERCLA purposes at the time of the dipping activity?

3. If Crocker is liable under CERCLA, can Castlerock reach the corporate assets of Wells Fargo?

4. Do the state law claims fail?

## DISCUSSION

1. *What is the test for liability under CERCLA?*

42 U.S.C. § 9607 provides as follows:

Liability.

(a) Covered persons; scope ...

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

■ As set forth above, CERCLA imposes liability for cleanup costs on "... any person who at the time of the disposal owned or operated any facility[1] at which such hazardous wastes were disposed of ..." 42 U.S.C. § 9607(a)(2).

Under CERCLA, ownership liability attaches to a party who holds title to the property that comprises the facility. *City of Phoenix, Arizona v. Garbage Services Co.,* 816 F.Supp. 564, 567 (D.Ariz. January 19, 1993 ("*Phoenix I*")). In the alternative, "Operator liability under section 9607(a)(2) only attaches if the defendant had authority to control the cause of the contamination at the time hazardous substances were released into the environment." *Kaiser Aluminum & Chemical Corp. v. Catellus Development Corp.,* 976 F.2d 1338, 1341 (9th Cir.1992).

The court finds that two premises for liability, however, must be restricted when considering conservators and executors facing potential CERCLA liability. The court will explain the nature of these restrictions below.

### 2. *How is the liability test applied to the case at hand?*

#### i. *Period of disposal/cattle dipping*

There are two prongs to the test to show CERCLA liability. The plaintiffs must show: (1) that defendants either owned or operated the property; and (2) that defendants owned or operated the property *during the period of disposal.*

■ The court will address the second prong first because it is a much easier factual question. The question, for purposes of this motion for summary judgment, is whether there are questions of material fact remaining as to whether Crocker owned the property during the period of disposal. Some evidence has been presented that the dipping activity, or period of disposal, ended prior to Crocker taking on its responsibilities as con-

servator in 1969 and later as executor for Lucile Markham's estate in 1977. *See* deposition testimony of Eugene Roland (Brock Decl., Ex.A). Other evidence suggests that the dipping activity ended in the late 1970's, long after Crocker took legal title to the land in its fiduciary capacity. *See* invoices for Coopertox (McMorrow Decl.Ex. No. 15) and photograph showing maintained fencing in the area of the dipping tank (Cress Decl. Ex.A).

Because of the above discrepancies, the court finds that a triable question of material fact remains as to the issue of when the dipping activity took place and when it ended. This is a major issue going to the ultimate liability of Wells Fargo.

#### ii. *Owner liability*

■ The next issue before the court is whether Crocker can be held liable as an owner of the Markham Ranch through its role as conservator, and later as executor, for Lucile Markham's estate. Only scant case law has addressed the question of whether a conservator or executor can be held liable as an owner under CERCLA.

Based on the few cases that address this issue, the legislative history of CERCLA, and the public policy concerns intended to be addressed by CERCLA, the court has come to the conclusion that liability can extend to conservators and executors so long as they hold adequate indicia of ownership over and above bare legal title. If a conservator merely holds bare legal title to real property then no liability will extend. If a conservator or executor holds other indicia of ownership, CERCLA liability can potentially attach for disposals that occurred during the period of ownership.

*City of Phoenix, Ariz. v. Garbage Services Co.,* 816 F.Supp. 564, 567 (D.Ariz.1993) ("Phoenix I") is discussed at length by both parties. It is the first case to formulate an application of the CERCLA statute to trust-

---

1. CERCLA broadly defines the term "facility" to include "any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).

ees. The *Phoenix I* case involved issues arising under CERCLA when the City of Phoenix sought recovery from Valley National Bank ("VNB"). VNB was the trustee of a landfill. VNB held bare legal title to the landfill in its role as a trustee. It was held liable for response costs incurred in cleaning up the contaminated property solely because it held title. *Id.* at 566. The *Phoenix I* court applied an analysis based on the law of trusts.

In finding CERCLA liability applicable to trustees, the *Phoenix I* case referred to the legislative history of the CERCLA statute. The court relied on the House Report on CERCLA defining the term owner "... to include not only those persons who hold title to a ... facility, but those who, in the absence of holding a title, possess some equivalent indicia of ownership." H.R.Rep. No. 172, 96th Cong., 2d Sess. 36 reprinted in 1980 U.S.Code Cong. & Admin.News 6119, 6160, 6181. *Id.* at 567.

Further, *Phoenix I* cites the language of CERCLA which provides that the only exception to the ownership liability under CERCLA is found in 42 U.S.C. § 9601(20)(A). This section provides, in part, "Such term [owner] does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." For instance, a secured lender who holds title only as security could be excused from liability since the lender is only protecting its loan by possessing some indicia of ownership. That the CERCLA language does not pro-

vide for any other exclusions, led the *Phoenix I* court to conclude that for purposes of ownership liability the drafters of CERCLA intended that trustees be liable since they hold legal title to the trust res.

The language contained in the *Phoenix I* opinion addressing the issue of trustee liability is very broad. In theory it could be applied to other fiduciaries. Castlerock proposes that this court extend *Phoenix I* to cases involving conservators and executors. Castlerock seeks that Crocker, as conservator and later executor, be liable under CERCLA as an owner because they held legal title to the property during the time that it was contaminated.

No published case, however, has discussed the issue of whether conservators or executors may be found liable under the CERCLA definition of an owner. The case law that does exist does not differentiate clearly between the way in which conservators and executors are treated for purposes of CERCLA.[2]

In the case at bar, Crocker held legal title to the Markham Ranch during the time it served as conservator. Crocker, however, cites Cal.Prob.C. § 1801(b): "A conservator may be appointed for a person who is substantially unable to manage his or her own financial resources ..." for the proposition that Crocker did not actually hold title. The conservator, according to Crocker is charged with the duty of acting "... diligently in marshaling, taking possession of, and making inventory of the conservatee's assets ..." Comment to Cal.Pro.C. § 2401(a). Crocker claims that since it was only holding the

---

2. The one case that does address the issue of executor liability is an unpublished order *City of Phoenix, Arizona v. Garbage Service Co.*, 1991 WL 294636, 1991 U.S.Dist. LEXIS 17741; 33 ERC (BNA) 1656 (D.Ariz. April 4, 1991). This unpublished case order stated that a motion for summary judgment should be granted "[T]o the extent that the City [plaintiff] rests its claim [*5] of ownership solely on VNB's role as an executor the motion is granted." This statement was followed by a further explanation. The court held that if the evidence presented indicated that VNB also possessed other indicia of ownership, they would rule another way: "[T]o the extent that a trier of fact could determine that VNB possessed other additional indicia of ownership sufficient to bring it within the CERCLA definition of owner, and in all other respects [the motion for summary judgment] is denied." *Id.* This order is not binding upon this court. This court is not satisfied that existing case law requires a finding that CERCLA liability does not extend to conservators and executors during periods of release in all circumstances. The court also notes that a later order in the same case was published in final form in *City of Phoenix, Ariz. v. Garbage Services Co.*, 816 F.Supp. 564, 567 (D.Ariz.1993). This later order was extremely broad. That later decision did not restrict a finding of CERCLA liability to cases where indicia of ownership were present in the case of a trustee. The Court's opinion did not, however, specifically address the issues of conservator or executor liability.

property for its conservatee, then it did not "own" the property.

Crocker's arguments based on this Probate Code section, however, ignore the distinction between legal and equitable title to real property. Such a distinction arises in analyzing the fiduciary relationship contained in a conservatorship. According to Cal. Pro.C. § 2101, "The relationship of a conservator to conservatee is a fiduciary relationship governed by the law of trusts." "[I]t is a rudimentary principle of trust law that the creation of a trust divides title—placing legal title in the trustee, and equitable title in the beneficiaries." *Allen v. Sutter County Bd. of Equalization,* 139 Cal.App.3d 887, 890, 189 Cal.Rptr. 101 (1983); *Guardianship of Wood,* 193 Cal.App.2d 260, 266, 14 Cal.Rptr. 147 (1961).

*Guardianship of Wood, supra,* holds that a conservator does own bare legal title until it distributes the assets of the conservatorship to the conservatee. The court, however, finds that since a conservator is bound by the laws of the state to seek a court order to sell or convey property, the legal title of a conservator is a lesser form of title than that possessed by a trustee. Conservators and executors hold title by reason of office in contrast to a trustee who holds title by deed. All acts done by a conservator or an executor vis-a-vis property require a court's approval except where additional powers are given by the instrument which created their office. On the other hand, a trustee holds legal title for benefit of beneficiaries who have equitable title. Generally powers of a trustee are greater and broader than those of an executor or conservator. Actions of a trustee require court approval in fewer instances. The trustee obtains written title by the very trust instrument itself.

A stricter test for CERCLA liability should apply to conservators and executors

because their title is much lesser than is the title held by trustees. With regard to executors, case law indicates that an executor does not even hold bare legal title to the property it administrates and later distributes to the heirs. According to *Reeve v. Jahn,* 9 Cal.2d 244, 70 P.2d 610 (1937), title to the property passes immediately to the heirs upon the decedent's death. Thus, at least in the case of executors, they do not even possess bare legal title to the property they distribute. *Phoenix I*'s proposition that all that is needed for CERCLA liability is bare legal title does not apply directly to the facts of this case. Title is important, but it is merely one factor in establishing CERCLA ownership liability in a fiduciary.

The court finds that bare legal title is not enough in determining whether a fiduciary should be held liable as an owner under CERCLA. Other factors must be considered in determining this issue. The conservators and executors must not only hold bare legal title, but must possess other indicia of ownership.

There has never been a culpability requirement for liability of owners under CERCLA. "The trigger to liability under § 9607(a)(2) is ownership or operation of a facility at the time of disposal, not culpability or responsibility for the contamination." *Phoenix I* at 567, citing *Nurad, Inc. v. Hooper & Sons Co.,* 966 F.2d 837, 846 (4th Cir.1992) and *United States v. Monsanto,* 858 F.2d 160, 168 (4th Cir.1989). Further, public policy mandates that CERCLA be applied broadly in order to effect its remedial provisions. Yet, it does not necessarily follow that ownership liability can be applied in the case of every type of fiduciary.

Congress is apparently considering clarifying CERCLA liability in cases of executors and conservators.[3]

---

3. "The Clinton administration's proposal for Superfund authorization contains a provision that would explicitly include within the definition of "owner or operator" a "trust or estate." [FN16] However, that same definition would expressly exclude 'a person who holds title to [property] solely in the capacity as a fiduciary,' provided that such person (i) does not participate in the management of ... facility operations that result in a release or threat of release of hazardous

substances; and (ii) complies with such other requirements as the Administrator [pf EPA] may set forth by "regulation." [FN17] In turn, 'fiduciary' would be newly defined to mean a 'trustee, executor, administrator, custodian, guardian, conservator, or receiver acting for the exclusive benefit of another person,' so long as the fiduciary 'has not previously owned or operated' the property in a non-fiduciary capacity." [FN18]

■ Another potential way "ownership" liability could be proven is by showing Crocker's involvement in leasing the property known as the Markham estate. In *United States v. South Carolina Recycling and Disposal, Inc.*, 653 F.Supp. 984, 1002–1003 (D.S.C.1984), *aff'd in part, vac'd in part*, 858 F.2d 160 (4th Cir.1988), *cert denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989), the court found that a lessee/sublessor could be held liable as an "owner" pursuant to § 107(a)(2) of CERCLA. The court reasoned that the defendant, as lessee/sublessor, "had control over and responsibility for, the use of the property and, essentially, stood in the shoes of the property owners." *South Carolina Recycling, supra.* Similarly, Crocker became involved in a lease of the ranch property. According to the evidence presented by the parties, Crocker, as conservator, held a one-half interest in a lease on the Ranch from 1974 to 1976. As part of a sales contract with Rancho Corral de Tierra, Inc., Crocker, on behalf of Lucile Markham, together with Walter Markham leased back the Ranch property from 1974 until 1977. They did this so that livestock operations could continue on the property (McMorrow Decl., Exh. 27 at WF660; Ex. 28 at M1970; Ex. 37 WF523; CSOF No. 52) As a lessor, Crocker stood in the shoes of the property owners, and therefore had control over and responsibility for the use of the property, including any cattle dipping which may have caused further contamination.

Evidence indicates that Crocker also requested and was granted the additional powers articulated in Probate Code § 1853 when it took control of the Lucile Markham estate as a conservator (McMorrow Decl., Ex. 1, 2 and 3; CSOF No 2 indicating that Crocker obtained the additional powers of Probate Code § 1853 in its petition to the Probate Court). The additional powers are set forth in former Probate Code § 1853 as follows:

> [to] institute and maintain all actions and the proceedings for the benefit of and to defend all actions and other proceedings against the conservatee or the conservatorship estate; to take, collect and hold the property of the conservatee; to contract for the conservatorship and to perform outstanding contracts and thereby bind the conservatorship estate; to operate at the risk of the estate any business, farm or enterprise constituting an asset of the conservatorship; to grant and take options; to sell at public or private sale; to create by grant or otherwise easements and servitudes; to borrow money and give security for the repayment thereof; ... to alter, improve and repair or raze, replace and rebuild conservatorship property; to let or lease property for any purpose ... to loan money for adequate security; ... to effect necessary insurance for the property protection or the estate, ... and to employ attorneys, accountants, investment counsel, agents, depositaries and employees and to pay the expense thereof from the conservatorship estate. Former Cal.Pro.C. § 1853

These powers articulated in former Probate Code § 1853 allowed Crocker to sell and convey property without court order. The ability to sell and convey the property is one of the most basic elements of title. Such an ability is an important indicator of ownership. Involvement in the management and operation of an estate are other indicia of ownership. The key question is whether the fiduciary could have affected the disposal of the hazardous wastes on the subject property.

An analysis of ownership requires a determination of whether indicia of ownership over and above bare legal title exist. The test for "ownership" liability under CERCLA, therefore, has become similar to test for "operator" liability under CERCLA.

The court concludes that questions of material fact clearly remain as to the issue of whether Crocker possessed sufficient indicia of ownership of Lucile Markham's estate for purposes of CERCLA liability.

### iii. Operator liability

■ Even if Crocker is not shown to be an owner, Crocker may be liable if Castlerock

Charles F. Lettow and Joyce E. McCarty, *Courts, Congress Address Potential Superfund Liability of Fiduciaries*, 13 No. 9 PH–BNKPR 5 4/18/94.

proves that Crocker participated in the operations of the Ranch during the time of disposal. 42 U.S.C. § 9607(a)(2) provides that any person who "... operated a facility at the time of disposal ..." may be liable under CERCLA. The Ninth Circuit has construed the term "operator" broadly. *Kaiser Aluminum v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341–42 (9th Cir.1992), adopted the "well-settled rule that operator liability only attaches where a person had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." "Authority to control" is the standard that has been adopted by most courts. *See, Nurad, Inc. v. Hooper & Sons Co.*, 966 F.2d 837, 842 (4th Cir.1992). The most commonly followed standard for determining liability as an operator is "the degree of control that party is able to exert over the activity causing the pollution." H. Lewis McReynolds, Comment, *The Unsuspecting Fiduciary and Beneficiary as 'Owner or Operator' of a Hazardous Waste Facility Under CERCLA,* 44 Baylor L.Rev. 71, Winter, 1992.

The Eleventh Circuit, in *United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990) imposed absolute liability on a secured creditor. The court held that a secured creditor was liable for response costs because the creditor participated in the financial management of a debtor to such a degree that it most likely had a capacity to influence the treatment of hazardous wastes. *See, also,* "The unsuspecting fiduciary and beneficiary as owner or operator; of a hazardous waste facility under CERCLA," Comment, Baylor University Law School, Winter, 1992, H. Lewis McReynolds.

The evidence set forth below indicates to the court that Crocker may have had authority to control the ranch property from 1969–1978 and did, in fact, exercise that authority.

For instance, as discussed in the section on "ownership," according to the petition for conservatorship obtained by Crocker in 1969, Crocker sought, and was granted by the Probate court, the right to exercise the powers articulated in former Probate Code § 1853 "... with or without notice, hearings, confirmation, or approval of the court." (McMorrow Decl., Ex. 1, 2 and 3; CSOF No 2).[4]

The granting of § 1853 Probate Code powers indicates to the court that Crocker had greater than normal powers as a conservator. This indicates that Crocker was or wanted to be possibly involved in the management and operation of the facilities in this case. In any event, it indicates that Crocker wanted an expanded role vis-a-vis the property. In addition, there are several other ways that Crocker has potential involvement in the operation of the estate.

Despite Crocker's claims to the contrary, there appear to remain several issues of fact as to the nature and extent of Crocker's involvement in the day to day operations of the Ranch during the conservatorship and executorship periods. According to the McMorrow Decl., Ex. 6 (M69–72), Crocker was involved in the sale of the Ranch, the appraising of the Ranch for purposes of establishing a sales price, the discussion of terms, and the preparation of the sales contract (McMorrow Decl., Ex 9 (WF 666–673) Ex. 5 at 149:19–150:6; CASSOF No. 2).

Crocker's Trust Administrator, F.W. Borst, admitted that Crocker had a fiduciary duty to manage and protect the community real property assets that were a part of the conservatorship. McMorrow Decl. Ex. 5 at 33:19–35:6; CSODF No. 15). Borst understood that he had the following duties: (1) to inspect the property periodically; (2) to ensure that the property did not become run down; (3) to ensure that there was not a diminution in value of the real property; (4) to ensure that the property was taken care of; and (5) to make sure that the property carried liability insurance. *Id.*

The court finds that adequate evidence has been offered by Castlerock to raise issues of material fact as to Crocker's liability as an operator.

### 3. Can Castlerock reach the corporate assets of Wells Fargo?

 The court finds that questions of material fact do exist as to Crocker's liability

4. *See* page 16, *supra.*

**369**

under CERCLA. Therefore, the court now reaches the issue of whether Castlerock can seek recovery from the corporate assets of Wells Fargo.

*City of Phoenix, Ariz. v. Garbage Services Co.,* 827 F.Supp. 600 (D.Ariz.1993), (*"Phoenix II"*), involves the same parties and facts as does *Phoenix I,* discussed *supra. Phoenix II,* however, addresses the issue of whether the trustee of a contaminated landfill may be held personally liable or whether its CERCLA liability is limited to the amount of trust assets that are available to indemnify the trustee.

*Phoenix II, supra,* at 605 sets forth the following guidelines to apply in analyzing a trustee's CERCLA liability:

(1) Where a trustee is held liable under subsection 107(a)(1) as the current owner of contaminated property, the trustee's liability is limited to the extent that the trust assets are sufficient to indemnify him.

(2) Where a trustee is held liable under subsection 107(a)(2), but the trustee did not have the power to control the use of trust property, the trustee's liability is limited to the extent that the trust assets are sufficient to indemnify him.

(3) Where a trustee had the power to control the use of trust property, and knowingly allowed the property to be used for the disposal of hazardous substances, then the trustee is liable under subsection 107(a)(2) to the same extent that he would be liable if he held the property free of trust.

*Id.*

As discussed above, the court has found that questions of material fact remain as to whether Crocker had authority to control operations on the Ranch during the time it served as conservator and executor. Because of this, it is impossible now for the court to make a determination of whether Crocker's liability as conservator and executor should be limited under *Phoenix II* to the extent of Lucile Markham's available estate. In applying the above standards for recovery under CERCLA, the court would have to make a determination as to the nature of Crocker's involvement in the management and control of the estate. The court has already found that questions of fact remain as to the nature of Crocker's involvement in the operation of the estate.

**4. Do the state law claims fail?**

■ Castlerock appended three state law claims to its CERCLA cause of action: (1) a nuisance claim; (2) a trespass claim; and (3) a negligence claim. As stated by Wells Fargo in its moving papers, these claims will succeed or fail on the finder of fact's ultimate decision of Crocker's ownership of and ability to control the subject property. The court has already found that questions of material fact remain as to these exact issues.

■ There is an issue as to whether Castlerock brought its state law claims outside the statute of limitations period set forth in Cal.Code of Civ.Proc. § 338(b). The court finds that the moving party has not presented any evidence that Castlerock was on notice or should have realized that a toxic spill had occurred on the property. Wells Fargo merely expresses its own unsupported opinion that a reasonable person would have known that a cattle dipping tank might cause a toxic spill.

This is an inadequate showing to support a motion for summary judgment on the notice issue.

There is, therefore, a triable issue of fact on the issue of notice and the statute of limitations.

**CONCLUSION**

The applicable standard is whether any issues of material fact remain to be decided with regard to the allegations of CERCLA liability. The court has not yet addressed any potential defenses to the allegations of liability under CERCLA. The court makes the following findings:

(1) Issues of material fact remain as to the time period during which the alleged disposal occurred.

(2) Issues of material fact remain as to whether or not Crocker was an owner of the property for CERCLA liability purposes during the time period in question.

(3) Issues of material fact remain as to whether or not Crocker acted as an operator during the relevant time period.

GOOD CAUSE APPEARING, based on the above findings and reasoning set forth herein, the court denies Wells Fargo's motion for summary judgment or in the alternative for summary adjudication in its entirety.