UNITED STATES of America and the State of Colorado, Plaintiffs, Counter–Defendants, and Third–Party Defendants,

v.

Robert M. FRIEDLAND, Defendant, Counter–Defendant, Counter–Claimant and Third–Party Plaintiff,

v.

Aztec Minerals Corporation, an Ohio corporation; South Mountain Minerals Corporation and Gray Eagle Mining Corporation, a Colorado Corporation, Third–Party Defendants, Counter and Cross–Claimants, and Third–Party Plaintiffs,

v.

Bechtel Corporation; f/k/a Bechtel Civil, Inc., f/k/a Bechtel Civil & Minerals, Inc.; Bank of America National Trust and Savings Association, a national banking association; Industrial Constructors Corporation, a Montana corporation; A.O. Smith Corporation, a New York corporation; Columbia Geosystems, Ltd., f/k/a Columbia Reservoir Systems, Ltd., an Alberta, Canada corporation; Gse Lining Technology, Inc. (as successor to Gundle Lining Systems, Inc., a/k/a Gundle Liner Systems, Inc.), a Delaware corporation; Klohn Leonoff, Inc., a Colorado corporation; Klohn Leonoff, Ltd., in its English form; and Klohn–Leonoff, Ltee, in its alternative French form, a British Columbia, Canada Company, Third–Party Defendants and Cross–Claim Defendants.

No. CIV.A. 96–N–1213.

United States District Court, D. Colorado.

March 31, 2001.

Nancy Ann Mangone, Environmental Protection Agency, Region VIII, Denver, CO, Melissa K. Ward, U.S. Environmental Protection Agency, Washington, DC, David L. Dain, Lois J. Schiffer, John W. Sither, A. Kent Mayo, U.S. Department of Justice, Environmental Enforcement Section, Environment & Natural Resources Division, Washington, DC, Alan David Greenberg, Peter R. Mounsey, John N. Moscato, James D. Freeman, U.S. Department of Justice, Environment & Natural Resources Division, Denver, CO, Richard B. Caschette, Kennedy & Christopher, P.C., Denver, CO, Leonard M. Gelman, Denver, CO, Henry L. Solano, U.S. Department of Labor, Washington, DC, Michael P. Carey, Richard T. Spriggs, Stephen D. Taylor, Linda Ann Surbaugh, United States Attorney's Office, Denver, CO, for USA

Cheryl A. Linden, Jane T. Feldman, Jennifer Lee Gimbel, Laura Marie Maresca, Attorney General's Office, General Legal Services Section, Denver, CO, Felicity Hannay, Davis, Graham & Stubbs, LLP, Denver, CO, Gale A. Norton, Attorney General's Office, Department of Law, Denver, CO, Alan J. Gilbert, Daniel S. Miller, Stephen Marshall Brown, Robert J. Eber, Attorney General's Office, Natural Resouces Unit, Denver, CO, Patricia S. Bangert, Powers & Phillips, PC, Denver, CO, Timothy M. Tymkovich, Hale, Hackstaff, Tymdovich & ErkenBrack, LLP, Denver, CO, Robert Reiny Marsh, Attorney General's Office, Criminal Enforcement Division, Denver, CO, Joseph Carroll Smith, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Robert D. Clark, Attorney General's Office, Business and Licensing Section, Denver, CO, for State of Colorado.

Frederick J. Baumann, James M. Lyons, Scott Mark Browning, Rothgerber, Johnson & Lyons, LLP, Denver, CO, Lee D. Foreman, Saskia A. Jordan, Haddon, Morgan & Foreman, P.C., Denver, CO, John Dennis Fognani, Christopher L. Thorne, Suzanna K. Moran, Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP, Denver, CO, Craig V. Richardson, Greenberg, Taurig, LLP, Denver, CO, for Robert M. Friedland.

Stanley L. Garnett, Connie Louise Peterson, Mark M. Mathews, Angela Wynn Victoria Jacobs, Amy Monger, Brownstein, Hyatt & Farbe, P.C., Denver, CO, Rebecca L. Summerville, Ronald B. MacDonald, Datsopoulos, MacDonald & Lind, PC, Missoula, MT, for Industrial Constructors Corporation

Timothy R. Gablehouse, Donn Lee Calkins, Melanie Joy Granberg, Gablehouse & Epel, LLC, Denver, CO, for Aztec Minerals Corporation, Gray Eagle Mining Corporation, and South Mountain Minerals Corporation.

Mark A. Wielga, Elizabeth Hope Temkin, Temkin, Wielga & Hardt, L.L.P., Denver, CO, for Cleveland-Cliffs Iron Co., Union Pacific Resources Co., and Union Pacific Resources Group, Inc.

Peter John Korneffel, Jr., Brownstein, Hyatt & Farber, P.C., Denver, CO, James A. Clark, Cassandra Gay Sasso, Munir Reza Meghjee, Baker & Hostetler, Denver, CO, for Bechtel Corporation.

J. Eric Elliff, Tarek Fathi M. Saad, Morrison & Foerster, Denver, CO, Arne David Wagner, Michele Biegel Corash, Morrison & Foerster, LLP, San Francisco, CA, for Bank of America National Trust and Savings Association.

Richard S. Vermeire, John L. Watson, Craig B. Shaffer, Dianne Michelle Kueck, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO, Joanne Herlihy, Dufford &

Brown, P.C., Denver, CO, for A.O. Smith Corporation.

Jeffrey A. Chase, Ann B. Frick, Mark D. Sullivan, Jacobs, Chase, Frick, Kleinkopf & Kelley LLC, Denver, CO, Neil Kenton Alexander, Porter & Hedges, LLP, Houston, TX, for Columbia Reservoir Systems, Ltd.

Paul David Phillips, Steven W. Black, Holland & Hart, LLP, Denver, CO, for Columbia Geosystems, Ltd.

Jeffrey A. Chase, Ann B. Frick, Mark D. Sullivan, Jacobs, Chase, Frick, Kleinkopf & Kelley LLC, Neil Kenton Alexander, Porter & Hedges, LLP, Houston, TX, for GSE Lining Technology, Inc.

William C. Scott, Stuart R. Butzier, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, Victor F. Boog, Linda Ann Battalora, Victor F. Boog, P.C., Lakewood, CO, for Southway Construction Co., Inc.

Hugh Gottschalk, Terence M. Ridley, Wheeler, Trigg & Kennedy, Denver, CO, for Sun Oil.

Roger L. Freeman, Michael John Gallagher, Davis, Graham & Stubbs LLP, Denver, CO, for ARCO.

Robert Daniel Scheid, Stephanie Erin Dunn, Eden Collins Steele, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Denver, CO, for Gilbert Western Corporation.

Jennifer K. Schreck, Gibson, Dunn & Crutcher, Denver, CO, for Staker Paving and Construction Company, Inc.

James Daniel Levine, Long, Aldridge & Norman LLP, Atlanta, GA, James T. Markus, John Frederick Young, Block, Markus and Williams, LLC, Denver, CO, for Geosyntec Consultants, P.C.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a CERCLA action. Third–Party Plaintiff Industrial Constructors Corporation ("ICC") requests that I find the following as a matter of law: (1) Plaintiff United States is a record owner of real property or mineral interest at the Summitville Mine site; (2) the United States' ownership interest at the Summitville Mine qualifies it as an "owner" within the meaning of section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. § 9607 (West 1995 & Supp.2000); (3) the United States is a potentially responsible party (or "PRP") under CERCLA; and (4) as a result, the United States' claims are limited to contribution under section 113 of CERCLA, 42 U.S.C.A. § 9613. This matter is before the court on "Industrial Constructors Corp.'s Combined Motion for Partial Summary Judgment on its First and Third Counterclaims for Relief and for Summary Judgment on the Claims for Relief Filed by the United States and Joinder in Defendant Robert M. Friedland's Combined Motion for Partial Summary Judgment on His Third Counterclaim for Relief for Relief and for Summary Judgment on the United States' Claims for Relief" filed February 1, 2000. Jurisdiction is based upon 42 U.S.C.A. §§ 9607(a) and 9613(b) and 28 U.S.C.A. § 1331 (West 1993).

## FACTS [1]

In May 1996, the United States— through the Environmental Protection

---

1. I note that ICC has incorporated the statement of undisputed facts set forth by Robert Friedland in his motion for partial summary judgment, in which ICC has joined. (Mem. in Support of Industrial Constructors Corp.'s Combined Mot. for Partial Summ. J. on its First and Third Counterclaims for Relief and for Summ. J. on the Claims for Relief Filed by the United States and Joinder in Def. Robert M. Friedland's Combined Mots. for Partial

Agency ("EPA")—submitted a memorandum entitled "Litigation Referral for a CERCLA Section 107 Cost Recovery Against Robert M. Friedland" ("Litigation Referral Memo") to the United States Department of Justice. (Mem. in Supp. of Robert M. Friedland's Combined Mot. for Partial Summ. J. on His Third Countercl. for Relief and for Summ. J. on the United States' Cls. for Relief, Statement of Undisputed Facts ¶ 1 [filed Aug. 2, 1999] [hereinafter "Friedland's Br."]; *admitted in pertinent part at* United States' Mem. in Opp'n to Robert M. Friedland's Combined Mot. for Partial Summ. J. on His Third Countercl. for Relief and for Summ. J. on the United States' Cls. for Relief, Resp. to Mr. Friedland's Statement of Undisputed Facts ¶ 1 [filed Sept. 10, 1999] [hereinafter "Pl.'s Resp. to Friedland's Br."].) Referencing the "EPA, Summitville Mine Site: Interim Final PRP Search Report" ("PRP Search Report"), a document prepared at EPA's direction, the Litigation Referral Memo contains a list of "Liable Parties" at the Summitville Mine site and provides, in pertinent part:

> The PRP Search Report discloses that the following owners and/or operators and generators have some degree of involvement at the Summitville Mine Superfund Site:
>
> . . .
>
> B. *Liable Parties*
>
> . . .
>
> (d) *[PRP's] Not being pursued:*
> Homestake (only owned stock, no authority to control)
> Klohn–Leonoff (oversight contractor for liner installation; defunct)
> Polaris (defunct)
> Quad (defunct)
> W.S. Moore (defunct)
> Trebilcock Mining (defunct)
> General Minerals (no liability)

Summ. J. at 3 [filed Feb. 1, 2000] [hereinafter

U.S. Forest Service (land management; not an operator)

(Decl. of Christopher J. Neumann in Supp. of Robert M. Friedland's Combined Mot. for Partial Summ. J. and for Summ. J., Ex. A [Litigation Referral Memo at 14–15] [filed Aug. 2, 1999] [hereinafter "Neumann Decl."].) As indicated above, the Litigation Referral Memo designates the United States Forest Service ("USFS") as a potential liable party and is within the category of those entities "[n]ot being pursued." (*Id.,* Ex. A [Litigation Referral Memo at 15].) The USFS is an agency of the United States Department of Agriculture, an executive department of the United States. (Friedland's Br., Statement of Undisputed Facts ¶ 3; *admitted at* Pl.'s Resp. to Friedland's Br., Resp. to Mr. Friedland's Statement of Undisputed Facts ¶ 3.)

In a section entitled "Identification of Potentially Responsible Parties," the PRP Search Report itself identifies the USFS as an entity which "might have CERCLA § 107(a) ownership liability." (Neumann Decl., Ex. B [PRP Search Report at 89–90, 103].) Specifically, the PRP Search Report describes the PRP status of the United States as follows: "By law, the United States of America is currently, and has been continuously since prior to 1926, the owner of the unpatented mining claims included in this title search. These claims are S.C.M.I. No. 27A, Bog No. 87A, Bog Nos. 107A and 108, G. & P., Narrow Gauge, No Good, and S.C.M.I. Nos. 4, 21, 24, 28, and 29." (*Id.,* Ex. B [PRP Search Report at 103].)

The Office of Minerals Exploration ("OME") was an agency of the United States Department of the Interior, an executive department of the United States. (Friedland's Br., Statement of Undisputed Facts ¶ 8; *admitted at* Pl.'s Resp. to

"ICC's Br.]".)

Friedland's Br., Resp. to Mr. Friedland's Statement of Undisputed Facts ¶ 8.) On or about May 26, 1964, OME executed an "Exploration Contract" with W.S. Moore Co. whereby OME would provide a loan to W.S. Moore for mineral exploration activities on certain patented and unpatented mining claims. (Neumann Decl., Ex. C [W.S. Moore Exploration Contract].) Certain unpatented mining claims—including S.C.M.I. Nos. 4, 21, 24, 27A, 28 and 29, G. & P., and No Good—appear in the PRP Search Report as well as Annex I to the Exploration contract. (Friedland's Br., Statement of Undisputed Facts ¶ 11; *admitted at* Pl.'s Resp. to Friedland's Br., Resp. to Mr. Friedland's Statement of Undisputed Facts ¶ 11.)

The Claimants of the High Altitude Nos. 1, 2, and 3 placer mining claims—located in the SW1/4 of Section 24, the NW1/4 of Section 25 and the NE1/4 of Section 26 of T.37N. R.3E., N.M.P.M., Rio Grande County, Colorado, respectively—relinquished those claims as part of the settlement of administrative mining claim contest proceedings brought against the claims by the United States as set forth in the decision in *United States v. Riggs.* (Friedland's Br., Statement of Undisputed Facts ¶ 12; *admitted at* Pl.'s Resp. to Friedland's Br., Resp. to Mr. Friedland's Statement of Undisputed Facts ¶ 12.)

On December 23, 1999, ICC filed its first and third counterclaims against the United States, stating a cause of action against the United States—in its capacity as past and present owners of certain property and/or mineral rights underlying or adjacent to the Summitville Mine Superfund site— pursuant to sections 107 and 113 of CERCLA, 42 U.S.C.A. §§ 9607 and 9613. (Industrial Constructors Corp.'s Answer to the United States of America's First Am. Compl., and Countercls. ¶¶ 16–43 [filed Dec. 23, 1999].) On February 1, 2000, ICC moved for partial summary judgment. (Industrial Constructors Corp.'s Combined Mot. for Partial Summ. J. on its First and Third Countercls. for Relief and for Summ. J. on the Cls. for Relief Filed by the United States and Joinder in Def. Robert M. Friedland's Combined Mot. for Partial Summ. J. on His Third Countercl. for Relief for Relief and for Summ. J. on the United States' Cls. for Relief [filed Feb. 1, 2000] [hereinafter "ICC's Mot. for Partial Summ. J."].)

## ANALYSIS

### 1. *Legal Standard*

 Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d 265. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). " 'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary

judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2505). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 [10th Cir.1990] ).

### 2. ICC's Motion for Partial Summary Judgment on its First Counterclaim

■ In its first counterclaim, ICC alleges that the United States is "a person who currently owns or operated the Site, or who owned or operated the Site at the time of disposal of hazardous substances," and that "Counterdefendant United States of America is jointly and severally liable under §§ 107(a)(1) and (2) for the necessary costs of response, consistent with the [National Contingency Plan] . . . ." (Industrial Constructors Corp.'s Answer to the United States of America's First Am. Compl., and Countercls. [filed Dec. 23, 1999].) The United States, however, contends that I may not entertain ICC's counterclaim because an action for cost recovery under section 107 of CERCLA seeking joint and several liability may be brought only by federal, state and tribal government entities, or by a non-liable party. I agree.

■ In *Sun Co., Inc. (R & M) v. Browning–Ferris, Inc.,* the Tenth Circuit held that only "governmental entit[ies] (Federal, State or Indian) or [parties] who did not contribute to the waste may recover all of [their] expenditures in a traditional § 107(a) 'cost recovery' action against any PRP." *Sun Co., Inc. (R & M) v. Browning–Ferris, Inc.,* 124 F.3d 1187, 1193 (10th Cir.1997). Potentially responsible parties (or "PRPs") under CERCLA are limited to actions for contribution pursuant to section 113(f) of CERCLA, 42 U.S.C.A. § 9613(f). *See United States v. Colorado & E. R.R. Co.,* 50 F.3d 1530, 1536 (10th Cir.1995) (holding under CERCLA's combined statutory scheme, any action by a PRP who was a defendant in a cost recovery action was a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make," and "any claim that would reapportion costs between these parties is the quintessential claim for contribution.")

The term "potentially responsible party" is not defined by CERCLA. Upon an examination of the text and the structure of CERCLA, however, the Fifth Circuit has held that "the most sensible reading of the statute demands that, even before any determination of actual liability, a party may be 'potentially liable' simply by being sued under the statute . . . . The courts may eventually clear a CERCLA defendant or third-party defendant from liability; but until it does, such a defendant is at least potentially liable." [2] *OHM Remedia-*

**2.** The court noted that "[t]his interpretation of potential liability under section 113 allows parties to bring contribution actions at least as soon as they are sued under CERCLA. By allowing parties to bring contribution claims before any finding or stipulation of liability, CERCLA makes possible the joinder of all potentially responsible parties in a single case, an early identification of potentially responsible parties for purposes of settlement, and as [sic] a single judicial apportionment of cleanup costs among responsible parties. Such a reading also allows parties to bring contribution actions after settlements, stipulations, or judicial determination of liability, within the three-year limitations period. Therefore we hold that, regardless of whether the company stipulates any responsibility for the spill, and before any court determines ultimate liability, OHM is nonetheless a potentially liable party by virtue of its status as a

*tion Servs. v. Evans Cooperage Co., Inc.,* 116 F.3d 1574, 1582 (5th Cir.1997); *see also Amcast Industr. Corp. v. Detrex Corp.,* 2 F.3d 746, 748–49 (7th Cir.1993) (holding, once sued, a party may bring a counterclaim for contribution without admitting liability under CERCLA). As a party being sued under CERCLA, ICC is a potentially responsible party and is therefore limited to an action for contribution under section 113(f) of CERCLA. Therefore, ICC's motion for summary judgment on its first counterclaim for relief is denied.

### 3. ICC's Motion for Partial Summary Judgment on its Third Counterclaim

ICC requests that I find the following as a matter of law: (1) the United States is a record owner of real property or mineral interest at the Summitville Mine site; (2) the United States' ownership interest at the Summitville Mine makes it an "owner" within the meaning of section 107 of CERCLA; and (3) the United States is a potentially responsible party under CERCLA.

There is no dispute that the United States, as holder of bare legal title to a number of unpatented mining claims randomly located within the boundaries of the Summitville Mine site, is a "record owner" of certain real property or mineral interest at the Summitville Mine. (Pl.'s Resp. at 2.) Furthermore, because the United States is being sued under CERCLA, it is currently a potentially responsible party under CERCLA. *OHM Remediation Servs.,* 116 F.3d at 1582. The issue which I must address, therefore, is whether or not the United States, as bare legal title holder of certain unpatented mining claims at the Summitville Mine site, is an "owner" for purposes of CERCLA liability.

CERCLA creates a regime of broad-ranging liability, permitting the govern-

defendant in the suit." *OHM Remediation*

ment to recover its response costs incurred in remedying environmental hazards posed by hazardous waste sites directly from parties responsible for pollution, as well as authorizing private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats. *See* 42 U.S.C.A. §§ 9607 and 9613. To establish liability under CERCLA, a plaintiff must show that a defendant is within one of the four classes of covered persons enumerated in 42 U.S.C.A. § 9607(a). Specifically, ICC contends that the United States falls within the second class of responsible persons enumerated in 42 U.S.C.A. § 9607(a)(2): "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable." (ICC's Mot. for Partial Summ. J. ¶¶ 2–3.) In response, the United States argues that bare legal title of unpatented mining claims is insufficient for purposes of CERCLA "owner" liability. (Pl.'s Resp. at 7–9.) To reiterate, the issue for my determination—a case of first impression which no court has directly addressed—is whether the United States, as the holder of bare legal title to unpatented mining claims, is an "owner" for purposes of CERCLA liability in light of its residual legal title. *See United States v. Iron Mountain Mines, Inc.,* 987 F.Supp. 1263, 1273 (E.D.Cal.1997) (noting, in response to the United States' argument as to whether it may be deemed an "owner" under CERCLA, that "whatever the merits of the argument as to the parcels when they were subject to unpatented mining claims, because there are no such claims now the United States is now the sole owner of all possessory interests").

*Servs.,* 116 F.3d at 1582–83.

In interpreting a congressional statute, my analysis normally begins with the statutory language itself. CERCLA's text, however, offers virtually no guidance in interpreting the extent of owner liability. The phrase "owner"—tautologically defined by Congress as "any person . . . owning" a facility—is a paradigm of neither clarity nor precision, much less a model of legislative draftsmanship. 42 U.S.C.A. § 9601(20)(A)(ii). CERCLA has been frequently criticized for its "inartful drafting and numerous ambiguities attributable to its precipitous passage." *Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 648 (3d Cir.1988). Nevertheless, I am called upon today to give content to this statutory tautology, a position to which I have become increasingly accustomed in CERCLA cases. My interpretation of the statutory provision in question necessarily entails guidance by the primary purpose of CERCLA, which is "to encourage quick response and to place the cost of that response on those responsible for the hazardous conditions." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 936 (8th Cir.1995).

My analysis of the term "owner," as set forth in § 9607(a), commences by "giv[ing] the term its ordinary or natural meaning." *United States v. Bestfoods*, 524 U.S. 51, 66, 118 S.Ct. 1876, 141 L.Ed.2d 43, (1998) (internal quotation marks omitted). Yet as the Second Circuit noted in *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321 (2d Cir.2000), "the term 'owner' has no natural meaning that can resolve the present dispute." ICC urges that simply holding bare legal title is sufficient to trigger CERCLA owner liability. (ICC's Br. at 5.) The United States, however, argues for a more expansive definition that relies primarily on property interests and the right to control property. (Pl.'s Resp. at 8.) Neither position is implausible. According to Webster's dictionary, an owner is "one that has the legal or rightful title

whether the possessor or not." *Webster's Third New International Dictionary of the English Language Unabridged* 1612 (1981). Black's Law Dictionary, however, equivocates between titular and possessory ownership, defining an owner variously as "[o]ne who has the right to possess, use, and convey something," and as "[o]ne who has the primary or residuary title to property." *Black's Law Dictionary* 1130 (7th ed.1999). As the Second Circuit noted in *Barlo*, "this definition's ambiguity comes as no surprise . . . ownership—and its attendant concept 'property'—has limited inherent content." *Barlo*, 215 F.3d at 328 (citations omitted). Furthermore, courts have supplied virtually no consistent guidance as to which property rights define ownership. *Id.* at 329 (*comparing Hodel v. Irving*, 481 U.S. 704, 716, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987) *with Andrus v. Allard*, 444 U.S. 51, 65–66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979)).

As indicated above, no court has specifically addressed whether the United States, as bare legal title holder of unpatented mining claims, can be held liable as an "owner" under CERCLA where the "possessor" of the land contaminates it. In various third-party contexts, however—such as where the alleged "owner" acted in the capacity of either trustee or conservator/executor of the property in question—several courts have addressed the scope of "owner" liability under CERCLA and whether bare legal title alone is sufficient to trigger such liability. *See, e.g., Castlerock Estates, Inc. v. Estate of Markham*, 871 F.Supp. 360 (N.D.Cal.1994) (holding ownership liability under CERCLA could extend to conservators and executors so long as they hold adequate indicia of ownership over and above bare legal title during period of disposal of hazardous substances); *City of Phoenix, Ariz. v. Garbage Servs. Co.*, 816 F.Supp. 564 (D.Ariz.1993) (finding bank, in its capacity

as trustee, liable for purposes of section 107 of CERCLA for response costs incurred in cleaning up the contaminated property even though it held only bare legal title). Furthermore, in considering the scope of owner liability under CERCLA, several courts have held that site control is sufficient indicia of ownership to impose CERCLA liability. *See, e.g., Castlerock*, 871 F.Supp. at 367; *Burlington N. R.R. Co. v. Woods Indus., Inc.*, 815 F.Supp. 1384, 1391–92 (E.D.Wash.1993); *Pape v. Great Lakes Chem. Co.*, No. 93 C 1585, 1993 WL 424249, at *3 (N.D.Ill. Oct.19, 1993); *see also, e.g., Delaney v. Town of Carmel*, 55 F.Supp.2d 237, 258–59 (S.D.N.Y.1999) ("[T]he owner of a leasehold interest in a CERCLA facility may be liable as an owner of that facility, as long as the lessee exercised sufficient site control to place it in the shoes of owners.") (internal quotation marks omitted); *United States v. A & N Cleaners & Launderers, Inc.*, 788 F.Supp. 1317, 1333 (S.D.N.Y. 1992) ("The undisputed facts establish that [the sublessor] exercised a degree of site control over the Property, that . . . confers ownership status upon it for purposes of CERCLA·. . . ."); *U.S. v. South Carolina Recycling & Disposal, Inc.*, 653 F.Supp. 984, 1003 (D.S.C.1986) ("[The lessee] maintained control over and responsibility for the use of the property and, essentially, stood in the shoes of the property owners."). The reasoning behind utilizing site control as indicia of ownership is readily apparent: where the lessee actively uses and pollutes the property, imposition of CERCLA liability is particularly appropriate. But, as the Second Circuit noted, "while the imposition of liability in such a situation is surely correct, imposing *owner* liability instead of *operator* liability threatens to conflate two statutorily distinct categories of potentially responsible parties." *Barlo*, 215 F.3d at 328.

It is widely recognized that there is no culpability requirement for owner-ship liability under CERCLA and that, therefore, owner and operator liability should be treated separately. *See Schiavone v. Pearce*, 79 F.3d 248, 254 (2d Cir. 1996) ("Observing that 'owner' liability and 'operator' liability denote two separate concepts, courts stress the disjunctive character of CERCLA liability." [internal quotation marks omitted] ); *Nurad, Inc. v. Hooper & Sons Co.*, 966 F.2d 837, 846 (4th Cir.1992) ("The trigger to liability under § 9607[a][2] is ownership or operation of a facility at the time of disposal, not culpability or responsibility for the contamination."); *cf. Bestfoods*, 524 U.S. at 64, 118 S.Ct. at 1886 ("If the Act rested liability entirely on ownership of a polluting facility, this opinion might end here; but CERCLA liability may turn on operation as well as ownership . . . ."). As the Second Circuit noted in *Barlo*,

Even a cursory examination of the basis for operator liability reveals that it would be almost entirely subsumed by owner liability that relied on site control analysis. As the Supreme Court recently explained, "an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 66–67, 118 S.Ct. 1876, 141 L.Ed.2d 43. If control over a facility could establish ownership then operator liability in these circumstances would be just a subset of owner liability. Imposing owner liability on the basis of site control threatens to make owners of all operators and surplusage of most of operator liability. *See Castlerock*, 871 F.Supp. at 367 ("The test for 'ownership' liability under CERCLA . . . has become similar to [the] test for 'operator' liability under CERCLA."). Because we strive to avoid redundancy in our interpretation

of statutes, *see, e.g., Exxon Corp.,* 475 U.S. at 369–70, 106 S.Ct. 1103, 89 L.Ed.2d 364, we believe that site control alone is an improper basis for the imposition of owner liability.

*Barlo,* 215 F.3d at 328–29.

In *Barlo,* the Second Circuit analyzed whether a lessee/sublessor might be held liable as an "owner" under CERCLA for contamination that a sublessee causes. Importantly, the court listed the following factors that might transform a lessee into an "owner" for purposes of CERCLA liability: (1) the term of the lease and rights of owner/lessor to determine how the property is used; (2) termination clauses; (3) the right to sublet without notifying the owner; (4) responsibility for payment of taxes, assessments, insurance and operation and maintenance costs; and (5) responsibility for repairs. In this context, the court will closely examine the relationship between the owner/lessor and the lessee/sublessor to determine the extent of control that the lessee/sublessor exercises over the premises.

An unpatented mining claim is "a unique form of property." *Western Mining Council v. Watt,* 643 F.2d 618 (9th Cir. 1981). To further clarify the rights associated with this form of property, and to determine whether the United States possessed indicia of ownership sufficient to merit the appellation "owner" for purposes of CERCLA, I shall undertake an examination of the relationship between the United States, as owner of bare legal title of the unpatented mining claim/property, and those entities utilizing the property subject to the unpatented mining claim. ICC contends that, in addition to bare legal title, the United States (through its agency USFS) possessed control as well as public responsibility over the land subject to the unpatented mining claims: (1) The USFS reviewed permit applications and controlled permit approval for mining operations by SCMCI at the Summitville Mine site. (2) The USFS constructed and controlled roads, easements and load limits on roads located at the Summitville Mine site. (3) USFS approval was necessary before SCMCI could proceed with its operating plan for proposed drilling. (ICC's Reply at 4–5.) Furthermore, ICC contends that the United States has a duty to prevent destruction of national forest land and to minimize adverse environmental impacts. (*Id.* at 5).

Nevertheless, the United States argues that, throughout the history of mining at Summitville, the United States' property interest at the site was encumbered by privately owned mining claims covering the land subject to mining activity. (Pl.'s Resp. at 8). Furthermore, the United States notes that its property interest in an unpatented mining claim stands in stark contrast to most "owners" of property. For instance, the United States notes that it (1) has no notice of initiation of the possession of its property, (2) has no ability to exclude persons from entering upon its lands that are open to mining claims, and (3) has no contractual relationship with the possessor of the property. (*Id.* at 9 n. 2.) Moreover, the United States notes that it receives no financial benefit from its lands subject to unpatented mining claims and lacks the power to retain title to its land if the claimant seeks title, having no ability to set the boundaries of the conveyance or set the terms of the sale based upon the land's value. (*Id.*)

To encourage private development of mineral deposits, federal law permits private parties to discover, explore, and reclaim mineral deposits in federally-owned lands. 30 U.S.C.A. § 22 (West 1994) ("[A]ll valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase, and the lands in which they are found to

occupation and purchase, by citizens of the United States ... under regulations prescribed by law."); *see also* 30 U.S.C.A. § 21a. The Mining Act of 1872, 30 U.S.C.A. § 26, provides that "[t]he locators of all mining locations made on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, ... so long as they comply with the laws of the United States ... shall have the exclusive right of possession and enjoyment of all surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth ...."

Thus, federal law permits private parties to acquire exclusive possessory interests in federal land for mining purposes, interests which entitle claim holders to extract and sell minerals without paying royalties to the Government. *See United States v. Locke*, 471 U.S. 84, 86, 105 S.Ct. 1785, 1788, 85 L.Ed.2d 64 (1985). Title to the underlying fee simple estate in the land remains in the United States. These possessory interests are known as "unpatented" claims to distinguish them from the ownership interest of the private owner who has obtained a "patent," that is, an official document issued by the United States attesting that fee title to the land is in the private owner. *Kunkes v. United States*, 78 F.3d 1549, 1551 (Fed.Cir.1996). Until a patent issues, the United States

retains paramount rights and interests in the Federal lands under the claim, and maintains the authority to regulate the uses of those lands.[3] *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963).

■■■ Even though title to the fee estate remains in the United States, these unpatented mining claims are themselves property protected by the Fifth Amendment against uncompensated takings. *See Best*, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350. Furthermore, although the United States maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired, the claimant nevertheless enjoys a valid, equitable, possessory title, subject to taxation, transferrable by deed or devise and otherwise possessing the incidents of real property. *Locke*, 471 U.S. at 104–05, 105 S.Ct. at 1798. *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930), describes the interest held by the owner of an unpatented mining claim:

When the location of a mining claim is perfected under the law, it has the effect of a grant by the United States of the rights of present and exclusive possession. The claim is property in the fullest sense of that term; and may be sold,

---

**3.** So long as it is valid, an unpatented mining claim, imparting a possessory mineral interest in land, gives the owner the right of present and exclusive possession for the purpose of mining. It does not divest the legal title of the United States nor impair its right to protect the land and its product from trespass or waste. The United States may regulate mining activities in the national forests in order to protect surface resources. *See United States v. Nogueira*, 403 F.2d 816 (9th Cir. 1968) (upholding the right of the United States to seek to enjoin the use of an unpatented mining claim for a residence wholly unrelated to any mining activity whatsoever); *United States v. Etcheverry*, 230 F.2d 193

(10th Cir.1956) (holding the owner of unpatented mining claims was not entitled to lease the claims for grazing of livestock, a use unrelated to mining). Furthermore, the claimant may not prohibit or interfere with activities associated with public use of the surface of the unpatented mining claims not dealing with mining. *See United States v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277 (9th Cir. 1980) (enjoining claimant from prohibiting or interfering with public use of the surface of the [unpatented mining] claims for hunting, hiking, camping and recreational activities "so long as there is not interference with ongoing mining operations.").

transferred, mortgaged, and inherited without infringing any right or title of the United States. The right of the owner is taxable by the state; and is "real property" subject to the lien of a judgment recovered against the owner in a state or a territorial court .... The owner is not required to purchase the claim or secure patent from the United States but so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent ....

*Wilbur v. United States ex rel. Krushnic,* 280 U.S. at 316–17, 50 S.Ct. at 104. *See also Locke,*[4] 471 U.S. 84, 86, 105 S.Ct. 1785, 85 L.Ed.2d 64.

■ Because unpatented mining claimants possess vested property rights (including the right to sell, mortgage, or inherit), are subject to taxation, and cannot be divested of their rights if they demonstrate substantial compliance with maintenance requirements specified in the mining law, I find that the United States is not an "owner" in the fullest sense of the term. Furthermore, the United States receives no financial benefit from its lands subject to unpatented mining claims and lacks the power to retain title to its land if the claimant seeks title. It has no ability to set the boundaries of the conveyance or establish the terms of the sale based upon the land's value. *See Locke,* 471 U.S. at 86, 105 S.Ct. at 1788 (upon compliance with

requirements of the mining laws, the applicant's rights to a mineral patent mature, and the United States has no authority to withhold patents under such circumstances); *Freese v. United States,* 226 Ct. Cl. 252, 639 F.2d 754, 758, *cert. denied,* 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 103 (1981) (holding vested right arises when claimant complies fully with procedures set forth in federal mining laws for obtaining patents). Finally, the United States is not allowed to exclude individuals from the land and may only regulate mining activities in the national forests in order to protect surface resources. Therefore, I find it inappropriate to deem the United States an "owner" for purposes of CERCLA liability. ICC's motion for partial summary judgment, to the extent it is predicated on a finding that the United States is an "owner" under CERCLA, is denied.

### 4. ICC's Motion for Summary Judgment on the 107 Claims filed by the United States against ICC.

■ ICC argues that, based upon its status as a potentially responsible party in this matter, the United States' section 107 cost-recovery claim should be converted into a section 113 contribution claim. The United States argues that, even if it is deemed a responsible party under CERCLA section 107 at the Summitville Mine, its status as a responsible party does not, as a matter of law, preclude the United

---

4. In *Locke,* the Court observed that Congress' power over the terms and conditions for the lease or acquisition of unpatented mining claims, a "unique form of property," is especially broad, for two reasons. *Locke,* 471 U.S. at 105, 105 S.Ct. at 1798. First, the claimholders take their claims with the knowledge that the Government, as owner of the underlying fee title, maintains broad regulatory powers over the use of the public lands on which unpatented mining claims are located. Second, unpatented mining claims consist of

"the right to a flow of income from production of the claim," and thus are "held subject to the Government's substantial power to regulate for the public good the conditions under which business is carried out ...." *Id.* at 105, 105 S.Ct. at 1798. Therefore, the Court concluded, Congress may condition initial receipt of unpatented mining claims, and also may apply conditions to vested claims (such as requiring existing claim holders to make annual filings). *Id.*

States in its environmental enforcement role from pursuing joint and several liability against potentially responsible parties at the Summitville Mine. I agree.

CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–4999, §§ 101–175, 100 Stat. 1613, 1615 (1986), provides two types of legal actions by which parties can recoup some or all of their costs associated with hazardous cleanup: cost recovery actions under CERCLA section 107(a), 42 U.S.C.A. § 9607(a), and contribution actions under CERCLA section 113(f), 42 U.S.C.A. § 9613(f). *Colorado & E. R.R.*, 50 F.3d at 1535. The issue for my determination here is whether a governmental PRP (the United States Government or a State or an Indian tribe) may bring a cost recovery action against another PRP under section 107(a) of CERCLA, 42 U.S.C.A. § 9607(a).

■ The original CERCLA legislation created only the cost recovery mechanism of section 107, which makes potentially responsible parties "liable for (A) all costs of removal or remedial action incurred by [governmental entities] ...; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C.A. §§ 9607(a)(4)(A) and (B). It is now well-settled that section 107 imposes strict liability on PRPs for costs associated with hazardous waste cleanup and site remediation as well as joint and several liability on PRPs regardless of fault. *Colorado & E. R.R.*, 50 F.3d at 1535 (citing *Farmland Indus. v. Morrison–Quirk Grain*, 987 F.2d 1335, 1339 (8th Cir.1993); *County Line Inv. Co. v. Tinney*, 933 F.2d 1508 (10th Cir.1991)). Defendants in section 107 actions could only escape joint and several liability—and have cleanup costs apportioned between themselves and other PRPs—if they could " 'demonstrate that the harm [was] divisible.' " *Id.* (quoting

*O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir.1989), cert. denied, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990)). Given the nature of the hazardous waste sites where wastes of varying and unknown degrees of toxicity and migratory potential have mixed, however, a determination of the amount of environmental harm caused by each party—and the concomitant apportionment thereof—was virtually impossible. *Id.* Therefore, CERCLA, as originally enacted, left a PRP faced with the prospect of being singled out as the defendant in a section 107 cost recovery action without any apparent means of fairly apportioning costs to other PRPs who may have contributed much of the waste. *Id.* The courts responded to this inequity by recognizing an implicit federal right to contribution where PRPs who were subject to joint and several liability incurred response costs in excess of their pro rata share. *Id.*

Congress codified this implicit right to contribution with the enactment of SARA, which added section 113(f)'s provision for contribution to CERCLA's scheme. *Sun Co., Inc.*, 124 F.3d at 1190. The Tenth Circuit held that, under the combined statutory scheme, any action by a PRP who was a defendant in a cost recovery action was a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make," and was "the quintessential claim for contribution." *Colorado & E. R.R.*, 50 F.3d at 1536, *reaffirmed* in *Bancamerica Commercial*, 100 F.3d at 800.

The Tenth Circuit has, on three separate occasions, attempted to further delineate and clarify the relationship between cost recovery actions under section 107 and contribution actions under section 113 of CERCLA, 42 U.S.C.A. §§ 9607 and 9613, specifically addressing who can recover un-

der each provision. *See Colorado & E. R.R.*, 50 F.3d 1530 (10th Cir.1995); *Bancamerica*, 100 F.3d at 792, as amended, 103 F.3d at 80; *Sun Co., Inc.*, 124 F.3d at 1187. In *Sun Company*, the court held that:

> Together, §§ 107 and 113 allow "any person" who has incurred cleanup costs consistent with the National Contingency Plan to recover some or all of those costs from PRPs who were responsible for the waste. *A governmental entity (Federal, State or Indian) or a party who did not contribute to the waste may recover all of its expenditures in a traditional § 107(a) "cost recovery" action against any PRP. Liability will be strict, joint and several.* A PRP who contributed to the waste may recover from other PRPs a portion of the costs it expended in cleaning up the site in a contribution action under § 113(f). *Colorado & Eastern*, 50 F.3d at 1536. The liability of the other PRPs will be defined by § 107, but under § 113(f), that liability will be several, and the total cleanup costs—including responsibility for "orphan shares"—will be equitably apportioned among all the PRPs, with the court being able to consider any factors it deems relevant. *Id.* ... If the PRP incurred its cleanup costs in some other way, without the attendant procedural safeguards of a judgment or CERCLA settlement, its contribution action will be the initial action for recovery of such costs.

*Sun Company, Inc.*, 124 F.3d at 1193 (emphasis added). The Tenth Circuit then proceeded to draw a distinction between the government and those parties who are *not* PRPs but have expended recovery costs, on the one hand, and PRPs on the other. I read the "or" contained in the highlighted language to be disjunctive, and I read the word "party" to be the sole antecedent of "who," thus allowing two separate classes to recover their expendi-

tures in a section 107(a) "cost recovery" action: (1) a governmental entity, which includes any Federal, State or Indian government; or (2) a private entity that did not contribute to the waste at issue. I do not, contrary to ICC's view, read the language for the proposition that only non-liable PRP's—both governmental and private—can bring cost-recovery actions under section 107(a). The Tenth Circuit, however, has not squarely addressed the potential imposition of joint liability where federal government agencies are themselves PRPs.

The Central District of California recently addressed the identical issue that is before me today. In *United States v. Hunter*, 70 F.Supp.2d 1100, 1103 (C.D.Cal. 1999), the court addressed whether the United States, despite allegations that one of its governmental agencies was a PRP, may nevertheless still assert claims against private defendants for joint and several liability under CERCLA. In *Hunter*, the government drew a distinction between private PRPs and governmental PRPs. Turning to the legislative history of CERCLA for further clarification, the district court noted that in House Report No. 99–253(I), the House Energy and Commerce Committee observed, of section 107:

> The Committee explicitly distinguished the United States' ability to seek joint and several liability from claims for contribution as allowed under § 113. In discussing § 113, the Committee observed: "This section does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107 ... Whether or not the U.S. was an owner or operator of a facility of a generator of waste at the site."

H.R. Rep. 99–253(I), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2856. The court found this language to militate strongly in favor of the United States government's ability

to pursue joint and several liability against private PRPs even when its own agencies are deemed PRPs.

Furthermore, construction of the statute as well as the United States' unique environmental enforcement role buttresses my conclusion that the presence of a federal PRP does not preclude the United States, as a matter of law, from pursuing joint and several liability against private potentially responsible parties at the Summitville Mine. The statutory separation of section 107(a)(4)(A) and (B), while not itself dispositive of the issue, is clearly reflective of the distinct role that certain governmental entities, particularly the United States government, play in enforcing CERCLA. *Id.* at 1104. Moreover, as the court noted in *Hunter*,

> the Court recognizes that this finding relies upon an understanding of the United States government's unique role: through the EPA it is responsible for enforcing CERCLA and recovering response costs to protect the public fisc. At the same time, there are governmental agencies who are themselves PRPs. If the government were a private party in this same factual situation, it would only be able to avail itself of a claim for contribution. However, the government's role in the enforcement of CERCLA is greater than that of a mere private party. Allowing the government to impose joint and several liability is in harmony with the overall policy aims of CERCLA.

*Id.* at 1108. For the foregoing reasons, I find that the government should be able to impose joint and several liability upon private PRPs, even where the government agencies themselves are deemed PRPs.[5]

Accordingly, ICC's motion for summary judgment is denied.

### 5. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. ICC's motion for partial summary judgment on its first and third counterclaims for relief (# 710–1) is DENIED.

2. ICC's motion for summary judgment on the claims for relief filed by the United States (# 710–2) is DENIED.

---

**5.** I am aware that my holding here is contrary to the holding of another district court case relied upon by ICC, *United States v. Scott's Liquid Gold, Inc.,* 934 F.Supp. 362 (D.Colo. 1996). Nevertheless, *Scott's Liquid Gold* addressed the issue before me today only in passing. I therefore do not find the case persuasive.